THE PEOPLE *vs.* JAMES RANDOLPH.

Although, by the common law of England, a person under 14 years of age is conclusively presumed to be incapable of committing the crime of rape, in this state the presumption is not conclusive, and may be overcome, by showing that the party charged had attained to puberty.

So much only of the common law of England was in force in the colony, on the 19th day of April, 1775, as was applicable to our circumstances and condition.

The *principles* of the common law are the same under all circumstances; but its *rules*, or the results of the application of the principles, will vary with the facts to which it is applied, or the conditions under which the application is made.

The presumption of the incapacity of a person under 14 years of age to commit a rape can only be overcome by clear proof of capacity; and where, on the trial at the Oyer and Terminer, the presiding judge submitted to the jury the question of capacity, on evidence strongly suggestive of doubt, if not entirely reconcilable with innocence, and the jury found the prisoner guilty, the conviction was reversed and a new trial awarded.

This was a certiorari from the Orleans Oyer and Terminer, where the defendant was convicted of rape. On the trial before Mr. Justice Bowen, it was proved on the part of the prosecution by the complainant, a girl upwards of fourteen years of age, that in July, 1853, the prisoner violently assaulted and

The People *v.* Randolph.

threw her down upon the ground and with his private member penetrated her private parts; that the prisoner with two other boys, one fourteen and the other ten years of age, had followed the complainant and another girl to a field a considerable distance from her residence, and that while following her, he stated to the boys with him, that he was going to have connection with her. It was also proved by the mother of the complainant, that she examined her in the evening of the same day and found marks of violence on her shoulders and back and saw on her under garments at places below the knees of the girl, and on the back and front of her garment, several spots of a yellowish color which were dry. The prisoner gave evidence tending to prove that at the time of the alleged offence he was under fourteen years of age. The counsel for the prisoner requested the court to charge the jury, that if the prisoner was under fourteen years of age at the time of the alleged offence, he could not be convicted of rape. The court refused so to charge and the defendant excepted. The court charged the jury, that *prima facie* a person under fourteen years of age was incapable of committing the crime of rape, but if the prisoner had in fact arrived at puberty, he might be convicted although under fourteen years of age; that, if the evidence showed that he was at the time capable of emission, that was sufficient proof of puberty, and that the fact of his following the complainant when he saw her go into the field, with the avowed intent to have connection with her, was a circumstance which the jury might take into account as evidence on that question. The counsel for the prisoner excepted to this charge and requested the court to charge, that there was not sufficient evidence to establish puberty and actual capacity to commit the crime of rape. The court refused so to charge, and the counsel for the prisoner excepted. The jury found the prisoner guilty of rape, and also found, under the direction of the court, that the prisoner was at the time of the commission of the offence under fourteen years of age. Whereupon his counsel moved the court to direct a verdict of not guilty, which the court refused to do, and the counsel for the prisoner excepted

Noah Davis Jr., for the prisoner.

B. L. Bessac, (District Attorney) for the people.

GREENE, J.—The proposition is neither disputed nor disputable that by the common law of England as it has been settled for several centuries, a person under fourteen years of age is conclusively presumed to be incapable of committing the crime of rape. The jury have found that at the time laid in the indictment the prisoner was under that age and have convicted him of this crime; and the question arises on this bill of exceptions, is the rule above stated a part of the law of this state. The counsel for the prisoner relies upon the 17th section of the first article of the constitution by which it is provided, among other things, that " such parts of the common law and of the acts of the legislature of the colony of New York as together did form the law of said colony on the 19th day of April, 1775, *shall be and continue the law of this state* subject to such alterations as the legislature shall make concerning the same." By virtue of this provision it is claimed that the rule in question (which was, as we have seen, the settled rule of the common law as it was then administered in England) became, and has since continued to be, the law of this state.

It is apparent that this argument rests upon the assumption that all the rules of the common law in force in England at the time in question were also in force in the colony of New York, and of course, the soundness of the argument depends upon the truth of this assumption. The common law consists of those principles and maxims, usages and rules of action which observation and experience of the nature of man, the constitution of society and the affairs of life have commended to enlightened reason, as best calculated for the government and security of persons and property. Its principles are developed by judicial decisions as necessities arise from time to time demanding the application of those principles to particular cases in the administration of justice. The authority of its rules does not depend upon positive legislative enactment, but

The People *v.* Randolph.

upon the principles which they are designed to enforce, the nature of the subject to which they are to be applied and their tendency to accomplish the ends of justice. It follows that these rules are not arbitrary in their nature nor invariable in their application, but from their nature as well as the necessities in which they originate, they are and must be susceptible of a modified application suited to the circumstances under which that application is to be made.

The principles of the common law, as its theory assumes and its history proves, are not exclusively applicable or suited to one country or condition of society, but on the contrary, by reason of their properties of expansibility and flexibility, their application to many is practicable. The adoption of that law in the most general terms, by the government of any country, would not necessarily require or admit, of an unqualified application of all its rules without regard to local circumstances, however well settled and generally received those rules might be.

Its rules are modified upon its own principles and not in violation of them. Those rules being founded in reason, one of its oldest maxims is, that where the reason of the rule ceases the rule also ceases.

The language of the constitutional provision above quoted is, "such parts of the common law as were in force on the 19th day of April, 1775, shall be and continue the law of this state. The question is, what parts of that law were then in force here. With the exception of such parts as had previously received the direct sanction of legislative enactment, which is not claimed for this rule, the authority of the common law resulted from our colonial dependence upon England. Upon the principles already stated, so much only of the common law was in force in the colony by virtue of that relation as was applicable to our circumstances and condition. This proposition is also sustained by the highest authority. In treating of the countries subject to the laws of England, Sir Wm. Blackstone says, "it hath been held, that if an uninhabited country be

discovered and planted by English subjects, all the English laws then in being, which are the birthright of every subject, are immediately there in force. But this must be understood with very many and very great restrictions. Such colonists carry with them only *so much* of the English law as is *applicable to their own situation and the condition of an infant colony,* such, for instance, as the general rules of inheritance and of protection from personal injuries. (1 *Black. Com.* 107.) Chancellor Kent, (1 *Com.* 472,) lays down the same rule with regard to the extent to which the common law was applicable in the colonies, and of, its subsequent adoption by the constitutions of the several states " the common law," he says " *so far as it is applicable,*" " has been recognized and adopted as one entire system by the constitutions of Massachusetts, New York, New Jersey and Maryland. It has been assumed by the courts of justice, or declared by statute *with the like modifications,* as the law of the land in every state. It was imported by our colonial ancestors, *as far as it was applicable,* and was sanctioned by royal charters and colonial statutes." This apparently qualified adoption of the common law is, after all, nothing more nor less than an adoption of its essential *principles,* the application of which to our circumstances, would result in a modification or entire change of some of its rules, which are nothing more than the result of the application of general principles to particular facts. The *principle* is essentially the same under all circumstances, but the *rule,* or result of its application, will vary with the facts to which it is applied, or the conditions under which the application is made.

We have then only to consider the nature of this rule, and compare the facts and conditions in which it originated with those from which it is now sought to be deduced, in order to determine whether it does or *ever did* prevail in this state. It is a *mere rule of evidence,* a presumption of law arising upon a given state of facts. . The principle of the law of presumptive evidence, is, that when experience shows a uniform connection or inconsistency between any two facts, upon proof of one of those facts, the existence or the absence of the other will be

The People. *v.* Randolph.

conclusively presumed, according to the uniform result of such experience.   When the result of that experience is not universal but general, the presumption still exists, but applies with diminished force.   In such cases it is not absolute, but *prima facie.*

The rule contended for by the prisoner had its origin in a country and at a time where males seldom if ever arrived at puberty before the age of fourteen years.   Hence the rule was the natural result of the application of the above principle to that acknowledged fact.   But it is a fact equally well, and I apprehend much better known, that in other races of men, and indeed in the same race, under the influence of different circumstances of climate and habits of life, this condition may be and is often developed at a much earlier period; and where this fact is known to exist, a modification of this rule of evidence seems to me to be the necessary result of the application of a familiar principle of law to the fact.   No principle is thus vio lated, but the rule is changed by the *operation* of the principle

I think it must be apparent to the most casual observation, that however well adapted this rule may be to the climate and population of the country where it prevails, the same circumstances render it equally inapplicable in this state, having a population composed of almost every variety of races and a climate as various as its population.   It may still be true in many, perhaps in a majority of cases, that the condition of of puberty is not attained before the age of fourteen; but that this is universally true, or so nearly so as to justify an absolute presumption of the fact, can not be, and indeed is not claimed. We have seen that it can not be sustained upon principle as an arbitrary rule of universal application, and no authority has been found showing its recognition as such in this state.

In the case of *Williams* v. *The State,* (14 *Ohio Rep.* 222,) it was held that the rule as administered in England was not applicable in that state for reasons similar to those already suggested, that the presumption that an infant under fourteen years of age was incapable of committing a rape, might be rebutted by proof that he had arrived at puberty.   I agree en-

tirely with the learned judge who delivered the opinion of the court in that case as to the soundness of the rule laid down by him, and the reasons by which it is vindicated; but I think as I have endeavored to show, that he has unnecessarily and erroneously assumed that the application of that rule involves any departure from " long established legal principles." It follows that the charge of the court below on this point was correct.

It was assumed at the trial and on the argument, that the condition of puberty was indispensable to the capacity of the prisoner to commit this crime, and that the fact must be proved in order to justify a conviction; and notwithstanding the provision of the revised statutes I am inclined to regard this presumption as the most reliable exponent of the results of general experience, and the rule founded upon it, as laid down at the trial as the only safe rule in such cases.

The question then arises, was the fact of puberty proved in this case? For the purpose of establishing this fact, the prosecution proved, that upon an examination of the complainant, the evening after the alleged offence, spots of a yellowish color were found on the back and front parts of her under garments below the knees. No evidence was given tending to show that these spots were actually produced by a deposit of semen, or that such appearances would naturally or probably be produced by such deposit, and it seems to me that the connection between such appearances and the alleged cause can rest upon nothing more tangible or rational than conjecture. It was also proved that the prisoner, in company with two other boys, followed the complainant into a field a considerable distance from her residence, and that while following her, the prisoner stated to the other boys that he was going to have connection with her. The court charged the jury, in substance, that this statement was evidence tending to show that the prisoner had arrived at puberty. With great deference, I must say, that I have not been able so to understand the tendency of this evidence, I can see no natural connection between this statement and the fact which the prosecution sought to infer from it. It seems to me quite as reasonable and natural to re-

The People *v.* Randolph.

gard it as the idle and thoughtless boast of a boy, who had no definite notions of the act of which he was talking, and as little capacity to commit it. Upon such evidence as this the conviction of a boy ten years old of this crime would be no impossible, and I might add, no improbable occurrence. The prisoner was proved to have been of an age when the law presumes him to be incapable of committing this crime, and it was the duty of the prosecution not only to meet but to repel this presumption by clear proof of his capacity. And if I am mistaken in supposing that no proof of this fact was given, still I can not but regard it as extremely dangerous to allow evidence so weak and inconclusive, so strongly suggestive of doubt, if not entirely reconcilable with innocence, to prevail against a presumption founded alike in reason and experience, so important to the protection of the innocent against unfounded prosecutions for the crime, the proof of which rests entirely with the complainant, and against which, when instigated by malice, cupidity or the temptations which disappointed, unregulated or vicious passion may suggest, even innocence is not always a sure defence. I have been forced, by the examination of this case, to the conclusion, that the learned justice who presided at the Oyer and Terminer, erred in the charge upon the point last mentioned, and also in submitting the case to the jury upon the question as to whether the prisoner had arrived at puberty at the time of the alleged offence. In my opinion this conviction can not be sustained without establishing a very dangerous precedent. The conviction must be reversed, and a venire de novo awarded. (*a*)

(a) On a subsequent trial the prisoner was convicted of an assault and battery only—*vide infra.*