ELLA E. BEARDSLEY *vs.* THE CITY OF HARTFORD.

A city is not bound to maintain a railing in front of the numerous basement offices and shops that line its business streets.

As cities are, by reason of special advantages, burdened with special duties

as to highways from which country towns are exempt, they should have the benefit of exemptions from liability arising out of the necessities of their business.

Open basement descents being necessary to the business of a city, the failure of the city to erect a barrier in front of them is not of itself negligence, and the city is not liable to a passer-by who, without negligence on his part, falls down such descents.

There is no negligence on the part of a city, in the omission to do that which it either has no right to do, or which it would be unreasonable for it to do.

The negligence of a town or city, to make it liable for an injury from a dangerous condition of a highway, must be such as would have made it liable to an indictment.

In some of the states a distinction is made as to the rule of liability, between municipal corporations, or corporations proper, and quasi corporations, such as towns or counties, imposing a greater liability on the former. But this distinction is not made by the courts of the New England states, and it is holden by them that a municipal corporation is liable only by force of the statute.

The absence of a railing, where the public travel is endangered by the want of it, constitutes a defect in the highway, as rendering it unsafe for public travel, independently of any statutory provision as to a railing.

ACTION ON THE CASE for an injury sustained by the plaintiff through the defective condition of a sidewalk of the defendant city; brought to the Superior Court in Hartford County. The following facts were found by the court:

On February 12th, 1877, and for a long time prior thereto, Farmington Avenue was and had been a highway, within the limits of the city of Hartford, which the city was legally bound to keep in repair.

On the south side of the avenue, at the corner of Flower street, stood a building known as the Union Hall Hotel, belonging to private parties. The upper part of it was used as a hotel and the lower story was occupied by stores. The entrance to the hotel and stores was on the Farmington Avenue front, and this front was seventy-five feet long. The distance from this hotel building to the curbstone or gutter on the south side of Farmington Avenue, was about seventeen feet and six inches. The street line as laid out, as appeared from the city surveys, ran in a line parallel with the hotel, about eleven feet south of the curbstone, and about six and one half feet from the front of the build-

ing.  But the whole distance from the curbstone in front
to the building was covered with flagging stones, and there
was no visible mark to indicate where the street line was,
unless it was that east of the hotel there was a fence
between the street and the adjoining proprietors which was
placed on or near the street line as laid out, but did not
extend west beyond the east end of the hotel building.
One of the stores in the lower story was occupied by one
Habenstein as a bakery, being the second store west of the
east end of the building, underneath which was a basement
with a flight of stone steps leading down to the basement
from the flagging in front of said building.   This stairway
was five feet six inches wide, and the opening extended
out from the front of the building four feet and seven
inches, and the stairway was about ten feet deep and very
steep, the first step being about twenty inches south of the
south line of the street as laid out.

On the west side of the stairway was an iron railing or
guard, attached to the building and extending out nearly as
far as the opening and partially guarding it, but the east
side and front were wholly unguarded, and the opening or
stairway was dangerous for persons passing along the side-
walk on the south side of Farmington Avenue in the night
season, by reason of the liability to overstep the line of the
street as laid out and fall into it.

On the evening of February 12th, 1877, about half-past
nine o'clock, it being very dark and the wind blowing with
great force, the plaintiff, who taught in a night school, had
occasion to pass along the avenue from the east on her way
home from school, in company with two other lady teachers
in the night school.   The store east of that occupied by
Habenstein was a drug store with lights in the windows,
but which did not cast any light upon the opening in ques-
tion.   Nor were there any street lights near enough to
send any light on the opening.   As these three ladies came
along from the east, they drew in  towards the wall of the
hotel to avoid somewhat the violence of the wind.

The plaintiff passed along until she arrived near the

edge of the stairway, of the existence of which she was ignorant. She then turned to speak to the lady behind her, and stepping backward fell into the opening and down the steps, receiving very serious and painful bodily injuries from which she is still suffering.

The accident and the injuries resulting were in no way occasioned by the negligence or want of care of the plaintiff.

The plaintiff gave notice to the defendant city of the injury as required by law.

Upon the foregoing facts the defendant claimed that it was not liable for the injuries sustained by the plaintiff, and that judgment should be rendered for nominal damages only ; for the reasons—

1. That the stairway in question was not a defect in the highway, for which the defendant city was responsible.

2. That the injuries were wholly caused by a dangerous opening located upon private property, for which the owner thereof was alone responsible.

3. That the injuries were received wholly outside of the highway and were occasioned by causes existing wholly without it, and which operated upon the plaintiff only when outside the limits of the highway and upon private property, the accident being from its inception to its end wholly without the highway.

4. That the nature of the defect and the circumstances of the injury were not such as to render the defendant, responsible therefor.

The court (Beardsley, J.,) overruled these claims and gave judgment for the plaintiff, for $800 damages.

The defendant appealed to this court.

S. O. Prentice, for the appellant, cited 2 Dillon Municip. Corp., § 1000 ; Wood on Nuisances, §§ 317, 324 ; Dimock v. Town of Suffield, 30 Conn., 129 ; Stonington v. States, 31 id., 213 ; Hewison v. City of New Haven, 34 id., 136 ; Ayer v. City of Norwich, 39 id., 376 ; Snow v. Inhab. of Adams, 1. Cush., 447 ; Smith v. Inhab. of Wendell, 7 id., 498 ; Kel-

*logg* v. *Inhab. of Northampton*, 4 Gray, 65; *Hixon* v. *City of Lowell*, 13 id., 59; *Richards* v. *Inhab. of Enfield*, id., 346; *Hawkes* v. *Inhab. of Hawley*, 123 Mass., 210; *Davis* v. *City of Bangor*, 42 Maine, 522; *Dickey* v. *Maine Telegraph Co.*, 46 id., 483; *Taylor* v. *Peckham*, 8 R. Isl., 349; *Sykes* v. *Town of Pawlet*, 43 Verm., 449.

*A. P. Hyde* and *F. E. Hyde*, for the appellee.

1. The basement descent was within the limits of the highway as actually used by the public, and therefore the city is liable, although it was a little outside the street line as laid out on the survey of the street. The court found that there was flagging extending from the curbstone clear up to the front of the building. There was no mark to fix the line of the street as laid out. The unbroken line of sidewalk was an invitation to the public to pass as well on the one side of the invisible street line as upon the other. Thereby the sidewalk on the. outside of the street line became as much a part of the actual highway as that on the inside. In *Ely* v. *Parsons*, 2 Conn., 382, it was held that where an order of the County Court fixing the limits of the prison made the line of a street one of the boundaries, it must be construed to mean the practical line, as it was used and traveled at the time of making the order, and not the air line specified in the laying out of the street. In *Manchester* v. *City of Hartford*, 30 Conn., 118, it is held that a sidewalk along a public street in a city, having been constructed and thrown open for public use, and used in connection with the rest of the street, must, *as a part of the street*, be so maintained and repaired as to be reasonably safe and convenient for the passage of travelers exercising ordinary care. We think it is clear under these decisions, and the finding of the court, that the place where this accident occurred was within the limits of the highway in the sense in which the statute uses that word. It was an open stretch of walk, whereon the public were invited to walk day and night. Nothing could indicate to them that they were outside the street line. It is clear that the statute

cannot mean by the word "highway" an undefined, unknown thing, which exists only on paper, and which it requires a surveyor with a compass and chain to locate. On the contrary, on principles of common sense, and in accordance with previous decisions of this court, it means the actual highway as people know it, and as they are using and have been accustomed to use it.

2. If the court shall hold that the word "highway," as used in the statute, refers only to that portion of the street included between the invisible lines of the survey, the defendant is still liable. In the case of *Munson* v. *Town of Derby*, 37 Conn., 298, the place where the accident occurred was a long distance from the line of the highway approved and accepted by the selectmen. A ditch had been opened across the abandoned highway and the plaintiff, mistaking the old for the new highway, was precipitated into the ditch and injured. In this case also the defendants claimed (p. 303) that the "plaintiff must prove to the satisfaction of the jury that the precise place where the injury was received was a public highway in the town of Derby;" but the court says (p. 311): "The fact upon which the defendants so much rely, that the place where the accident happened was from twenty to forty rods from the point of divergence of the two roads, and from two to five rods distant from the nearest point in the new highway, seems to us to be entitled to little or no weight. The danger did not materially depend upon the proximity of the ditch to the new highway, nor was it to any appreciable extent diminished by its distance from it." And on pages 313–314: "The case of *Davis* v. *Hill*, 41 N. Hamp., 329, is an authority directly establishing the proposition that 'the want of a sufficient railing, barrier, or protection to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stone, or other dangerous obstruction, *without its limits, but in the general direction of the travel thereon*, may properly be alleged a defect in the highway itself.' The same doctrine is supported by *Willey* v. *City of Portsmouth*, 35 N. Hamp., 303." Though the facts in the

case now before the court are not precisely the same as
above, the difference is only in the fact that in that case the
accident happened several rods from the line of the high-
way. In the present case the distance was only twenty
inches, and *in the general direction of the travel* on the
highway. In *Littlefield* v. *City of Norwich*, 40 Conn., 406,
there was an accident which happened by the plaintiff
falling into an opening left by removing a grating, and
in consideration of the facts in the case the court held
the city not liable, but it also held that "if the con-
struction of the grating had been such as to make it con-
stantly dangerous to public travel upon the walk, by its
liability to be left out of place, and a proper supervision
and care on the part of the city authorities would have dis-
covered the danger and guarded against it, the city would
have been liable. It is the duty of the city authorities to
be vigilant to guard against such accidents." In *Hewison*
v. *City of New Haven*, 34 Conn., 136, our court held that
"any object in, upon, *or near the traveled path*, which would
necessarily obstruct or hinder one in the use of the road for
the purpose of traveling thereon, or which from its nature
and position would be likely to produce that result, will as
a general rule constitute a defect in a highway." In the
case of *Hayden* v. *Inhabitants of Attleborough*, 7 Gray, 342,
the lower court instructed the jury as follows: " That if
the line of the highway was not indicated by any visible
objects, such as fences, banks of earth, or other objects, and
if there was nothing to show the plaintiff in the evening
that the route she was pursuing was not within the way
intended for public travel, and if, within the general course
and direction of the travel, where travelers were accus-
tomed to pass along the said highway, the cellar was so
situated within the limits of the highway as to render the
traveling there dangerous, or without the limits of the
located way but so near as to render the traveling there
dangerous, in the condition in which it was at the time of
the accident, and the cellar was suffered to remain beyond
a reasonable length of time within which to put the same in

a safe condition, or more than twenty-four hours, and the defendants had reasonable notice of the course of the travel, and of the dangerous condition of such cellar, and there was nothing reasonably to indicate or give notice to travelers of their approach to the cellar, until too late to avoid the same, the town would thereby become liable." The higher court sustained this charge. See also *City of Norwich* v. *Breed*, 30 Conn., 535; *Boucher* v. *City of New Haven*, 40 id., 456. We claim, therefore, that under the decisions of this court, and the general tenor of the law in such cases, and according to justice and good sense, the plaintiff is. entitled to the damages awarded by the lower court, whether the unguarded opening, which caused the injury to the plaintiff, was within the limits of the highway, or twenty inches without the surveyed street line. It was in the highway as used by the public, was dangerous to all night travelers, and the city was negligent of its duties in not causing the same to be properly guarded or closed.

LOOMIS, J. This is an action on the statute with regard to highways to recover damages from the defendant city for an injury sustained by the plaintiff through, as it is claimed, the defective condition of a sidewalk of the city. The case was defaulted in the Superior Court and heard in damages. The court awarded full damages, and the case is brought before us by a motion in error, the defendant claiming that the court erred in awarding more than nominal damages.

The facts as presented by the record are briefly as follows:—The place where the injury was received is a long established street of the city known as Farmington Avenue, at a point where a hotel fronts upon the street, with the space between it and the street line open and flagged like the sidewalk, with nothing to indicate the line between the street proper and the open space in front of the hotel. The front of the building is found to be seventeen and a half feet south from the curbstone of the sidewalk. The line of the street is eleven feet south of the curbstone, leaving six and a half feet of space, which was private property, be-

tween the street line and the front of the building. The hotel is kept in the second and higher stories of the building, with an entrance in front, and all the lower story is occupied by stores fronting on the street, the whole frontage of the building being seventy-five feet. One of these stores, with a basement, and a stairway in front leading to the basement, was occupied by one Habenstein as a bakery. The basement stairway extended four feet and seven inches from the front of the building, and had no protection except an iron railing on the west side of it. The plaintiff, on the 12th of February, 1877, had occasion to pass along the sidewalk from the east about half past nine in the evening, with two other ladies, and fell into this basement entry-way and was seriously hurt. It is found that the night was very dark and the wind blowing with great force, and that the three ladies went in close to the building to protect themselves somewhat from the violence of the wind, and that the plaintiff, when near the basement entrance, without being aware of its vicinity or existence, turned to speak to one of the ladies behind her and stepping backward fell into the opening. It is also found that the accident happened without negligence or want of care on her part.

It is well settled that a town or city is not liable for injuries from a defect in the highway except as made so by statute. In some of the states a distinction is made, as to the rule of liability, between municipal corporations, or corporations proper, and quasi corporations, such as towns or counties, imposing a greater liability on the former. But this distinction is not made by the courts of the New England states, and it is holden by them that a municipal corporation is liable only by force of the statute. That is clearly the law of this state.

Our statute provides that "towns shall, within their respective limits, build and repair all necessary highways and bridges, except where such duty belongs to some particular person." Gen. Statutes, p. 231, sec. 1. Cities by their charters are charged with the same duty with regard to the highways and bridges within their limits. And the

10th section of the statute provides that "any person, injured in person or property by means of a defective road or bridge, may recover damages from the party bound to keep it in repair." Another section of the statute provides that there shall be "a sufficient railing or fence on the side of such bridge, and of such parts of such road as are so made or raised above the adjoining ground as to be unsafe for travel." We think however that this provision does not apply to a case like this.

It has been repeatedly held in this and other states that the absence of a railing, where the public travel is endangered by the want of it, constitutes a defect in the highway; making the town or city liable, not by force of any statute specifically requiring a railing, but under the general provision that the highways shall be kept in repair; that term being held to mean that they shall be kept in such condition as to be *safe for public travel.*

A sidewalk is of course a part of a street, and entitled to the same protection as the rest.

The counsel for the defendant city has argued the case as if the mere fact that the place where the injury occurred was outside of the limits of the highway, is sufficient to save the city from all liability, even though the opening made travel unsafe. This proposition can not be sustained. An object or a state of things outside of the line of the street may render travel unsafe, and make a town or city liable for an injury occasioned by it. Of course nearness to or remoteness from the line of the street is a very important and generally decisive consideration in determining whether the travel is rendered unsafe by it, but where it is so near as clearly to endanger public travel the fact that it is outside of the line of the street has no other effect than this; if within the line of the street the authorities of the town or city have entire control over it, and can remove it if it be an obstruction, or fill up the cavity, if the defect be of that character, while they have no power to go upon private property for the purpose of doing it. The whole power, and so the whole duty, of the corporation is to protect the

public against it by a railing. This they have power to place, not on the property of the adjoining owner, but only on or within the line of the street. If the adjoining owner has dug a deep hole near the street line he is personally liable for any injury that a passenger upon the sidewalk, who uses ordinary care, may sustain by falling into it. But the city will also be liable, not for the digging of the hole, nor for leaving it unfilled, but for not doing what it had perfect power to do, erecting a barricade of some sort to prevent passengers from getting into it.

About this general principle there can be no serious question. It is well stated by HOAR, J., in *Alger* v. *City of Lowell*, 3 Allen, 405. "The place where the plaintiff fell was indeed outside of the line of the street; but the defect in the street which occasioned the injury was the want of a railing, if one was necessary at that place to make the street safe and convenient for travelers in the use of ordinary care. * * * The true test is not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger; but whether there is such a risk of a traveler, using ordinary care in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient." Numerous authorities might be cited to the same effect.

The whole question in the present case is therefore, whether it was the duty of the city to have placed a railing or barrier of some kind against these basement steps, so as to make sure that no passenger on the sidewalk could stray from the public way and fall down them.

And here it is to be observed that the city had no power to erect a railing that should simply fence in, in front and on the sides, this basement stairway. It would have had to go upon private ground to do this, and that it had no right to do. It could only erect a railing along the outer line of the sidewalk in front of the stairway. But such a railing would not have protected passengers from getting behind it unless it was carried along the whole front. It is found

that a fence ran along the street line from the east, but only as far as the east corner of the hotel. As the plaintiff came along the walk from the east she must have been within the street line until she reached the corner of the building. Habenstein's store was the second from the east corner, and the basement steps were immediately east of the door of his store. The plaintiff must have made therefore a very sudden deflection from the line of the sidewalk to bring herself in that short space, probably not over twenty or at most twenty-five feet, in close proximity to the building. It is found that the drug store at the east corner of the building had lights in the windows, so that she must have been aware of the deflection of her course. And her conduct in the matter is explained by the finding that she turned in towards the building "to avoid somewhat the violence of the wind." It is plain that, turning in at such an angle, as she left the part of the sidewalk that was fenced, would have brought her inside of any mere front railing that the city could have erected along the line of the walk on its own ground. A passenger thus turning in could be protected from falling into the basement gangway only by side railings, which the city had no right to place there, or by a continuous front railing that would have cut off all access to the hotel door and the doors of the stores, except through gates to be opened and shut as people passed in and out. Such an embarrassment as this to free ingress and egress would not be tolerated in a city, in front of a hotel and stores.

And this brings us to what we think is the real question in the case. Is a city bound to maintain a railing in front of the numerous basements and basement steps that line its business streets? Such basements are used in every populous city for business purposes of almost every kind. In a large city like New York the first story of almost every business block is reached by steps, that extend to the line of the street, while on each side of them are steps leading down to offices in the basement. These offices are of great value and rent for large sums, and it is essential to their

Beardsley *v.* City of Hartford.

convenient and profitable use that they be as open as possible to the entry of the public. Indeed a railing in front of them, with the necessity of opening and shutting a gate as people passed in and out, would greatly impair their value for all the purposes that give them value. The same state of things exists, though in less degree, in a smaller city like Hartford. Along its principal streets such basement shops may be counted by scores. In many of them there is not merely the necessary depression for steps, but the excavation extends along the whole front, giving room for larger windows, and wider entrance. Every such depression by the side of the walk, though outside of the limits of the street, renders travel along the sidewalk dangerous; for even if the descent be one of but two or three steps, it would be enough to cause a dangerous fall to one who should inadvertently step off. Indeed, as a person by such a fall would be thrown against the brick or granite sides of the building, such a place would be much more dangerous than a pit-fall as deep in a place in the country, where one would fall only upon the soil. It is true that the more populous the city, and hence the more thronged the street, the greater is the number of persons exposed to the danger; but as the city becomes more populous and the streets more thronged, the higher become rents, and the greater necessity for and value of such basement offices and places of business. It may indeed be set down as one of the necessities of city life, that basements along its business, and therefore its most thronged streets, should be thus used, and that they should be not only open but inviting to the public. Now what is the duty of the city with regard to them? There is no practicable way of perfectly protecting the public but by a railing in front of them. Can it be regarded as the duty of a city to maintain such a railing? Are we to apply to the case without qualification the same rule that would be applied to a pit hole, like the cellar of a burned building, adjoining a sidewalk, where a railing would cause no inconvenience to the owner of the property?

It is a well settled rule that the law varies with the vary-

ing reasons on which it is founded.   This is expressed by
the maxim, " *cessante ratione, cesset ipsa lex.*"   This means
that no law can survive the reasons on which it is founded.
It needs no statute to change it; it abrogates itself.   If the
reasons on which a law rests are overborne by opposing
reasons, which in the progress of society gain a controlling
force, the old law, though still good as an abstract princi-
ple, and good in its application to some circumstances, must
cease to apply as a controlling principle to the new circum-
stances.

There are certain special duties with regard to highways
resting on cities by reason of their character as such.   One
is that of having a more perfect road bed for the greater
amount of travel.   Another that of making sidewalks of
ample width and generally flagged.   Still another that of
removing snow and ice from the streets and walks.   Thus,
in *Landolt* v. *City of Norwich,* 37 Conn., 618, SEYMOUR, J.,
says.   " The peril [from snow and ice] is not such as to
warrant the great expense, in a sparsely inhabitated village,
of attempting a preventive or remedy; but in cities the
aggregate of peril by reason of the number exposed to it
becomes considerable, and the means of meeting the need-
ful expense are ample ; and hence in cities the public as
such properly undertake the duty of doing the best they
can to provide against the dangers to travel which winter
in this climate necessarily brings with it."   Now if, by
reason of the special advantages and special necessities of
cities they are by law burdened with special duties of this
sort, from which country towns and villages, by reason
solely of their character as such, are exempt, surely the
rule should work favorably for cities in those particulars in
which the necessities of business impose upon them limita-
tions which do not exist in country towns.   People collect
in cities in large part for purposes of traffic, and to these
purposes the central and most crowded streets of a city are
almost wholly devoted.   Must not the necessities of this
business furnish the law that shall determine the action of
the city in the matter of barring out the public, for the sake

of the safety of travelers, from those places below the level of the sidewalk that the business of the city absolutely requires should be kept easily accessible?    There are special dangers all along a city street, for an unwary foot passenger, that do not exist in country towns.    The projecting steps against which a pedestrian can so easily stumble in the night and be hurt, the hitching posts, posts for awnings, the very curb stone over which he could so easily trip, with the lower level of the gutter into which he could so easily be carried by a mistep, the occasional necessary descent of a steep place by steps, the projecting buttresses of buildings against which he might run—all needing but a slight deflection from the central part of the walk, which one would be very likely to make in a dark and stormy night—all these things, presenting dangers rarely found in a country village, and dangers to which the larger population makes the aggregate of exposure much greater, a city does not attempt, and is not expected, to provide against. They are necessary features of a city, and the peril a necessary incident of city life.    The open basement descents are as necessary to the business of the city as the open and unprotected wharves of a seaport are to its commerce.    Some streets in the city of New York lie close along the water, the wharves opening from them, and necessarily kept open for the passage of drays, while their outer edge is protected only by a low string piece, which while sufficient to prevent drays from backing into the water, would be no protection to a foot passenger, but would be likely to cause him to stumble and fall into the water.    These unprotected wharves are often but a few feet from the line of the street, and the passenger could easily stray upon them in a dark night.

The principle we are laying down is only the old established one, that the city must have been guilty of negligence in leaving a basement entrance unprotected, before it can be liable for an injury happening by reason of it.    If the erection of a barrier in front of such an entrance is what the city has no right to do, or if, having the right, it is what it cannot reasonably be expected to do, then there

is no negligence in the omission to do it. This principle is abundantly sustained by the authorities. In *Taylor* v. *Peckham*, 8 R. Isl., 349, the court held that a town was not liable for an injury from the fall of a sign which had not been securely fastened in its place upon a building outside of the limit of the highway. BRADLEY, C. J., in giving the opinion of the court says (p. 352:) "The liability for such accidents would carry with it an equally extensive authority. The towns must necessarily have a corresponding right to control the uses of property adjoining the highway, so as to protect themselves from the liabilities for such use." In *Hubbard* v. *City of Concord*, 35 N. Hamp., 52, SAWYER, J., giving the opinion of the court says (p. 68:) "We think it must be held to be the meaning of the enactment which subjects towns to liability for injuries resulting from obstructions, insufficiencies or want of repairs in their highways, that nothing is an obstruction which the town was not bound to have removed at the time of the injury under the circumstances of that particular case; nothing an insufficiency which it was not reasonably bound then to have improved; nothing a want of repairs which, in the same view it was not bound to have amended. \* \* If there was no duty there was no negligence. In the very idea of negligence is embraced a duty which the party ought to have performed. If the town, under all the circumstances, was not bound to remedy the defect or remove the obstruction, it is chargeable with no negligence or failure of duty." In *Jones* v. *Inhabitants of Waltham*, 4 Cush., 299, the defendant town was sued for an injury by falling into a cattle guard at a place where a railroad crossed the highway. The town had placed a railing before it as far as it was able to do without interfering with the passage of the cars. METCALF, J., giving the opinion of the court, says (p. 301):— "The only ground upon which the town can be held liable to this action is, that there was a dangerous place on the road side which required a fence or barrier to make the road safe for travelers. But when a town has no power to erect such fence or barrier, it is not answerable for the con-

sequences which follow from the want of it." Clearly there can be no difference in law between the case where a city has no power to place a barrier, and the case where it would, in view of all the circumstances, be unreasonable and improper for it to place one.

That the negligence of the town must be actual and not merely constructive, follows from the rule, which is well settled, that the neglect to repair or render safe a highway must be such as would have made the town liable to an indictment. Thus, it is said in *Davis* v. *City of Bangor*, 42 Maine, 522, that "the liability of a town for damages arising from a defective highway depends upon proof of the same facts that would render it liable to indictment, and in all cases where it may be held for damages it may be indicted." In Wood on Nuisances, sec. 324, it is said that "as a rule, those defects only are actionable which are indictable at common law as nuisances"; and further on in the same section the law on the subject of exposures to injury from objects outside of the line of the highway is thus laid down—(more strongly we think than the authorities will warrant:) "For injuries resulting from any obstruction in the highway itself, and over which the proper authorities have lawful control, and which they can lawfully remove, the town or city is liable. But where the injury results from something outside the limits of the highway, upon land which they have no authority to enter upon, the individual making or continuing the erection or obstruction alone is liable. It would be highly inequitable to hold the town liable for injuries resulting from something over which they have no control and which they cannot remove, any more than any other citizen."

Now in the court below, the judge, before whom the case was tried upon a hearing in damages, found the fact that travel along the sidewalk in question was endangered by the basement opening in question, and that the plaintiff sustained the injury while in the use of ordinary care, and upon these facts alone held the city liable to pay full damages. We think the court was in error in this, and that a further

fact was necessary to the liability of the defendants, namely, that the basement opening was one which the city was bound to have protected the public against by a railing. The law will not infer the liability from the mere fact of the danger. The law will not hold the city to the duty of erecting a barrier before such a place unless in all the circumstances it was reasonable and proper to erect one. And this fact should appear in the finding.

There was error in the judgment complained of.

In this opinion the other judges concurred: except PARDEE, J., who dissented.