THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HARRY MORTON, Respondent.

Second Department, June 14, 1954.

*Edward S. Silver, District Attorney* (*William I. Siegel* of counsel), for appellant.

*Mina Louise Flax* and *William Sonenshine* for respondent.

BELDOCK, J. Defendant was indicted for grand larceny, second degree, in that he stole $350 from Katherine Morton. On inspection of the grand jury minutes, it appeared that com-

plainant was defendant's wife. The County Court thereupon granted defendant's motion to dismiss the indictment on the ground that a husband may not be convicted of larceny of the property of his wife. In my opinion, the determination of the County Court was erroneous.

The question under consideration has not been passed upon by the Court of Appeals. While a passing reference to the problem was made in *People ex rel. Carr* v. *Martin* (286 N. Y. 27), the court found it unnecessary to make a determination with respect thereto. Nor is *People* v. *Decker* (143 App. Div. 590), an authority. In that case, while the court had under consideration a judgment convicting defendant of larceny of his wife's property, the actual determination was a finding by the court that defendant's guilt had not been established beyond a reasonable doubt. The specific question here involved was neither raised, nor passed upon therein.

At common law neither a husband nor a wife could commit larceny with respect to the property of the other. (*Queen* v. *Kenny*, 2 Q. B. D. 307, and other cases collected in 55 A. L. R. 558 *et seq.*) By the successive Constitutions of this State (N. Y. Const. [1777], art. XXXV; N. Y. Const. [1821], art. VII, § 13; N. Y. Const. [1846], art. I, § 17; N. Y. Const. [1894], art. I, § 16; N. Y. Const. [1938], art. I, § 14), the common law effective in the colony of New York on April 19, 1775, was continued in force subject to such alteration as the Legislature shall make.

Section 63 of article fifth of title III of chapter I of part IV, of the New York Revised Statutes, effective January 1, 1830 (2 Rev. Stat. of N. Y. [1829], p. 679), provided that " Every person who shall be convicted of the felonious taking and carrying away the personal property of another " shall be guilty of grand larceny if the value of the property was more than $25. Insofar as here material, the present larceny statutes are substantially the same. (Penal Law, § 1290, *et seq.*) Analysis of the statute, for present purposes, shows that the basic requirements before one may be adjudged guilty of larceny are: (1) That the act be committed with respect to the property of " another ", and (2) by a person separate and apart from the other.

There were two reasons why a husband could not be convicted of larceny of the property of his wife at common law: (a) a wife could not own property separate from her husband; upon marriage, her property and possession became his, with

the result that a husband could not steal the property of his wife since it was not the property of "another", and (b) the unity of husband and wife which marriage created, with the result that neither spouse was a "person" separate and apart from the other within the meaning of the statute, where the property of the other spouse was concerned. Therefore, at the time of the passage of the Revised Statutes, effective January 1, 1830, since the Legislature had not made any change with respect to the personal status or the property rights of spouses in relation to each other, the rule of the common law still prevailed in this State.

By chapter 200 of the Laws of 1848 (now part of Domestic Relations Law, §§ 50, 51), a married woman was given the right to own and hold property in her own name and for her own use, as though unmarried.

By chapter 172 of the Laws of 1862 (now also part of Domestic Relations Law, §§ 50, 51), a married woman was given the right to sue and be sued with respect to her separate property, as though unmarried.

By virtue of these latter two statutes, commonly known as the Married Women's Acts, it was long ago held that a married woman could sue her husband for conversion of her property. (*Whitney* v. *Whitney*, 49 Barb. 319, approved in *Wright* v. *Wright*, 54 N. Y. 437, 444.) It would seem logically to follow that if a married woman has a civil right of action against her husband for protection against a trespass to her property, the State should similarly have a right in the public interest to protect the property of a married woman. In other States, where the question has been raised, there is a conflict of authority.

Some States, by reason of the passage of Married Women's Acts similar in effect to present sections 50 and 51 of the Domestic Relations Law, hold that the common-law rule that a husband could not commit larceny with respect to the property of his wife was changed because the common-law rule of the unity of property rights of husband and wife had been abrogated. (*State* v. *Koontz*, 124 Kan. 216; *Beasley* v. *State*, 138 Ind. 552; *Hunt* v. *State*, 72 Ark. 241; *State* v. *Herndon*, 158 Fla. 115; *Whitson* v. *State*, 65 Ariz. 395.)

However, in other States, it is held that, while the Married Women's Acts affected property rights and contracts by giving a wife the power to hold property separate from that of her husband, those acts did not modify the status of marriage by

breaking up in any way the unity of man and woman in the marriage relation, and, therefore, the common-law rule that neither spouse could commit larceny with respect to the property of the other still continued. (*State* v. *Arnold,* 182 Minn. 313; *State of Ohio* v. *Phillips,* 85 Ohio St. 317; *Thomas* v. *Thomas,* 51 Ill. 162.)

In this State, prior to 1937, it was held that the Married Women's Acts did not abrogate the merger of husband and wife in the unity of marriage, and neither spouse could sue the other civilly for personal injuries wrongfully inflicted upon the other. (*Caplan* v. *Caplan,* 268 N. Y. 445; *Schubert* v. *Schubert Wagon Co.,* 249 N. Y. 253; *Allen* v. *Allen,* 246 N. Y. 571; *Schultz* v. *Schultz,* 89 N. Y. 644.) However, even when a husband was not liable civilly for a trespass on the person of his wife, he could be prosecuted criminally for such a trespass. (*People* v. *Winters,* 2 Parker Cr. Rep. 10; see, also, *Commonwealth* v. *McAfee,* 108 Mass. 458; 1 Wharton on Criminal Law [12th ed.], § 832, pp. 1119–1120.) This is an indication that, even though husband and wife might have been one for purposes of civil liability with respect to trespasses to the person, they were not considered a unity for purposes of criminal responsibility.

By chapter 669 of the Laws of 1937, the Legislature effectively abrogated the merger of husband and wife in the unity of marriage, by amending section 57 of the Domestic Relations Law. This amendment removed the archaic fiction of the personal unity of husband and wife by providing that a married woman has a right of action for an injury to her person or character, as well as for an injury to her property, the same as if she were unmarried.

Legislation in this State having achieved a point where husband and wife are no longer regarded as one, either with respect to person or property, there is no reason why either spouse may not be criminally as well as civilly responsible with respect to the rights, personal or property, of the other.

It is argued that statutes which are penal in character must be narrowly and strictly construed and in manner not to embrace cases which do not clearly fall within their terms. (*People* v. *Benc,* 288 N. Y. 318, 323.) Acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. (*People* v. *Shakun,* 251 N. Y. 107, 113.) It might also be argued that neither in the enactment of the original definition of larceny in the Revised Statutes in 1829, nor in the succeeding

revisions or codifications of the larceny statutes, nor in the enactment of what are now sections 50, 51, and 57 of the Domestic Relations Law, did any member of the Legislature have in contemplation the result reached by the present determination when he voted for the statutes which protect the individual rights of married people. These arguments carry no weight. The words of the larceny statutes are not ambiguous and are to be interpreted according to their natural and obvious meaning. " The language, literally construed, includes undiscovered, as well as existing modes of operation. * * * It would be an unjust reflection upon the wisdom and intelligence of the law-making body to assume that they intended to confine the scope of their legislation to the present, and to exclude all consideration for the developments of the future. If any presumption is to be indulged in, it is that general legislative enactments are mindful of the growth and increasing needs of society, and they should be construed to encourage, rather than to embarrass the * * * progressive tendency of the people." (*Hudson Riv. Tel. Co.* v. *Watervliet Turnpike & Ry. Co.*, 135 N. Y. 393, 403-404, recently applied in *Matter of Daniman* v. *Board of Educ. of City of N. Y.*, 306 N. Y. 532.)

Paraphrasing the language in *People* v. *Brengard* (265 N. Y. 100, 107), since the crime of larceny as defined with exactitude in the Penal Law does not include any limitation as to the persons or the ownership of property with respect to which larceny may be committed, for a court to introduce a limitation would result in a plain defiance of section 21 of this act, which directs that it be construed " according to the fair import of [its] terms ".

The law is not static. The public policy of one generation may not, under changed conditions, be the public policy of another. (*Patton* v. *United States*, 281 U. S. 276, 306.) Where the reason for a rule ceases, the rule also ceases. (*People* v. *Randolph*, 2 Parker Cr. Rep. 174, 177; *Funk* v. *United States*, 290 U. S. 371, 384-385.) In a determination of the problem here presented, " we cannot turn the clock back " to 1829, when the Revised Statutes incorporated the substance of the present definition of larceny. " We must consider " the rights of a spouse with relation to the other " in the light of its full development and its present place in American life throughout the Nation." (*Brown* v. *Board of Educ. of Topeka*, 347 U. S. 483.)

As stated in CARDOZO, Nature of Judicial Process, pp. 65-66: " when the social needs demand one settlement rather than

another, there are times when we must bend symmetry, ignore history and sacrifice custom in the pursuit of other and larger ends.

"From history and philosophy and custom, we pass, therefore, to the force which in our day and generation is becoming the greatest of them all, the power of social justice which finds its outlet and expression in the method of sociology.

"The final cause of law is the welfare of society."

It would not be consonant with our present social concepts of husband and wife to say that one is not a person separate from the other. Husband and wife may each be a party to an action as if single; each is alone liable for his or her tortious act; each may carry on a separate business; each may own and dispose of property; each may contract with the other as if unmarried; each may sue the other for injuries to person or property; each may exercise the elective franchise. When each spouse is thus given in fact as in law an existence separate from the other for all of these purposes, it is not only illogical, but it would be a retrogression to hold that, though a husband may be convicted for stealing from anybody else in the world, he may not be convicted for stealing from his wife.

The order should be modified by striking out the second and third ordering paragraphs and by substituting therefor a provision that the motion to dismiss the indictment should be denied, and as so modified the order should be affirmed.

NOLAN, P. J. (concurring.) I concur in the opinion of Mr. Justice BELDOCK, but deem it appropriate to make some further comment concerning the views which prevailed in the County Court, and which are urged by respondent on this appeal.

It was there stated, on the dismissal of the indictment by which respondent was accused of stealing his wife's property, that New York is a common-law State, and that it was the rule of the common law that neither spouse could commit the crime of larceny with respect to the other's property, because in the eyes of the common law, husband and wife were but one person. It was also stated that the Legislature of this State has not seen fit to abrogate directly the common-law rule by amendment of the larceny provisions of our Penal Law, and that the courts cannot create new criminal laws by judicial fiat. It was determined, therefore, that the common-law rule still forms part of the law of this State. The premises are correct. We disagree only with the conclusion.

We are mindful, as was the learned County Judge, that statutes changing the common law must be strictly construed and

the common law must be held no further abrogated than the clear import of the language used in the statutes expressly requires (*Matter of Ryan,* 291 N. Y. 376, 400) and that the common-law incidents of marriage are swept away only by express enactments (*Bertles* v. *Nunan,* 92 N. Y. 152; *Allen* v. *Allen,* 246 N. Y. 571, 579, *supra*). Concededly, the rule which respondent has successfully invoked formed part of the common law of the colony of New York, which has been continued as the law of this State, " subject to such alterations as the legislature shall make " (N. Y. Const., art I, § 14). We see no necessity, however, for further legislative action to effect its abrogation.

The genius of the common law lay in its flexibility and its adaptability to the changing nature of human affairs. (*Rozell* v. *Rozell,* 281 N. Y. 106, 112; *Oppenheim* v. *Kridel,* 236 N. Y. 156.) Its flexibility consisted not in the change of its essential principles, but in the application of old principles to new cases and in the modification of the rules flowing from them. (*Rensselaer Glass Factory* v. *Reid,* 5 Cow. 587, 628.) The rules of the common law were the result of the application of general principles to particular facts. The principle was essentially the same under all circumstances, but the rule, or the result of its application, varied with the facts to which it was applied and the conditions under which the application was made. Since its rules were founded in reason, one of the oldest maxims of the common law was that where the reason for the rule ceased, the rule also ceased. (*People* v. *Randolph,* 2 Parker Cr. Rep. 174, *supra; Funk* v. *United States,* 290 U. S. 371, *supra.*)

Except where vested rights were involved (cf. *Bertles* v. *Nunan, supra*), the common law as continued by our Constitution, lost none of its flexibility or its adaptability to changing conditions (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Oppenheim* v. *Kridel, supra; Rozell* v. *Rozell, supra; Woods* v. *Lancet,* 303 N. Y. 349), and the maxim heretofore referred to became as much a part of our law as the rule which we are now considering. (Cf. *People* v. *Randolph, supra,* and *Bertles* v. *Nunan, supra.*) That rule, which prevented the prosecution of a husband for the larceny of his wife's property was the natural result of the application by the courts of the ancient common-law principle that husband and wife were one person to the definition of the crime of larceny, which involved a taking by one person of the property of another. Almost twenty-seven years ago, Judge POUND, in discussing the extent to which the principle had then survived, said (*Allen* v. *Allen,* 246 N. Y. 571, 572, *supra*):

"The law of the rights of married women has been evolved from the ' archaic period of our race ' (EARL, J., in *Bertles* v. *Nunan*, 92 N. Y. 152, 156), when husband and wife were regarded in law as one person, to its present status where the recognition of the wife's separate person and property is practically complete. The Married Women's Acts are held to have no relation to or effect upon real estate conveyed to husband and wife jointly and they take, as at common law, as tenants by the entirety. (*Bertles* v. *Nunan, supra.*) This is a rule of property rights which stands until the Legislature changes it. It is also assumed to be the law of New York, as held in 1882 in *Schultz* v. *Schultz* (89 N. Y. 644) that a husband may libel or slander his wife, prosecute her without probable cause on criminal charges, assault her or falsely imprison her without subjecting himself to liability to her for damages, not because he is within his legal rights in thus injuring her, but because the Legislature has failed specifically to include the husband in the general grant to her of the right to sue for injuries to her person. With these exceptions, the fiction is well nigh as archaic as its origin ''.

As has been noted by Mr. Justice BELDOCK, those exceptions no longer exist. It is unnecessary to determine whether any vestige of the ancient principle remains. It is sufficient that it has been swept away by express enactment to such extent that if any vestige remains it no longer supports the conclusion that a husband cannot steal his wife's property. We see no reason why the rule under consideration should survive the reasons for its existence. If respondent misappropriated his wife's property, he has no moral or other right to assert that he acted in good faith on an assumption that the rule would be continued in force for his protection. The reasons for its existence having been removed by the Legislature, the rule has ceased to exist. (*Funk* v. *United States*, 290 U. S. 371, *supra; Beardsley* v. *City of Hartford*, 50 Conn. 529; *State ex rel. Johnson* v. *Tautges, Rerat & Welch*, 146 Neb. 439.)

The statement of this conclusion does not create a new criminal law by judicial fiat. Our statutory definition of larceny (Penal Law, § 1290), of which the rule formed no part, remains unchanged by our determination. Neither does it involve the arrogation of a legislative prerogative. Direct legislative action would be appropriate, but is not required. The power to adapt, or to abrogate obsolete rules, which in their origin were of judicial creation, is one which the courts have always possessed

(cf. *People* v. *Randolph, supra; Town of Brookhaven* v. *Smith, supra; Oppenheim* v. *Kridel, supra; Rozell* v. *Rozell, supra; Beardsley* v. *City of Hartford, supra; State ex rel. Johnson* v. *Tautges, Rerat & Welch, supra,* and *Schwanke* v. *Garlt,* 219 Wisc. 367), and which they have not only the right, but the duty to exercise when justice demands it (*Woods* v. *Lancet,* 303 N. Y. 349, *supra*).

ADEL, WENZEL and SCHMIDT, JJ., concur with BELDOCK, J.; NOLAN, P. J., concurs in separate opinion, in which ADEL, WENZEL and SCHMIDT, JJ., concur.

Order of the County Court of Kings County modified by striking out the second and third ordering paragraphs and by substituting therefor a provision that the motion to dismiss the indictment be denied, and as so modified order affirmed.