Harold J. Crawford, J.
Fundamental questions concerning the scope of the parent-child immunity doctrine are posed on this motion by defendant Rockland Leasing, Inc. (hereinafter Rockland), to dismiss the complaint for insufficiency pursuant to CPLR 3211 (subd. [a], par. 7).
This action is by the unemancipated infant plaintiff Michelle to recover damages for injuries sustained while a passenger in a motor vehicle owned by Rockland, which was operated by Muriel Kemp, the plaintiff’s mother, and collided with a motor vehicle owned and operated by the defendants Samuel and Bernice Solomon. Plaintiff alleges that the motor vehicle owned by Rockland ‘‘ was being managed, operated and controlled by Muriel Kemp with the knowledge, permission and consent, express or implied of” said defendant.
The theory of liability urged by plaintiff is predicated on section 388 of the Vehicle and Traffic Law which attributes to the owner of a motor vehicle the negligence of a person “ using or operating the same with the permission, express or implied, of such owner ’ ’. Rockland contends that it is not liable under this statute because its liability is derived from the infant plaintiff’s mother and since the infant plaintiff cannot recover from her mother pursuant to the rule that an unemancipated child cannot maintain an action against his parent for negligence (Sorrentino v. Sorrentino, 248 N. Y. 626), Rockland is also exempt from liability, citing Gullen v. Havens (an unreported Civil Court case decided Nov. 29, 1965) and Sikora v. Keillor (17 A D 2d 6, affd. 12 N Y 2d 610).
*1074 In Gullen, the facts were similar to those at bar and the court, on the authority of Sikora, held that the immunity of a child to sue its parent barred recovery in a suit by the child against the owner of a motor vehicle operated by the parent.
Sikora was an action to recover damages for personal injuries arising from the alleged negligent operation of an automobile owned by one defendant and operated by a volunteer fireman in the performance of his duties. Section 205-b of the General Municipal Law provides an exemption to volunteer firemen from civil liability for acts done in the course of their duties, except for willful negligence or malfeasance. As to the owner of the ear, the Appellate Division, Second Department, held (pp. 7-8) that since the volunteer fireman was exempt from liability, the owner was also exempt since “ the underlying purpose of the statutory exemption, viz., to encourage and facilitate volunteer firemen’s service, will not be accomplished if the immunity from liability does not extend to the owner of the vehicle which was used by the fireman in the performance of his duty.”
This court is of the opinion that the two above-discussed decisions do not constitute binding authority, since in Sikora (supra), the court based its decision on the public policy underlying the firemen’s exemption. Here a different exemption founded on different policy considerations is involved. In the absence of binding authority, the court seeks guidance in approaching this novel question by looking to settled rules of construction, cases in analogous areas of the law and, most importantly, to considerations of public policy.
In construing the scope of section 388 of the Vehicle and Traffic Law, this court is mindful of the rule that ‘ ‘ The Legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied. (Dean v. Metropolitan El. Ry. Co., 119 N. Y. 540, 547) ” (Psota v. Long Is. R. R. Co., 246 N. Y. 388, 393.) In construing the applicability of the parent-child immunity, this court is mindful of the statement of Judge Cabdozo in Schubert v. Schubert Wagon Co. (249 N. Y. 253) where the Judge, in discussing the scope of the husband-wife immunity, stated (p. 256): “No doubt one can gather pronouncements from treatise or decision which, taken from their setting, give color of support from an exemption even wider. They have no such effect when related to context and occasion. Few formulas are meant to serve as univorsals. A progeny deformed or vicious may be known as illegitimate. Here as elsewhere we are to be on our guard against the perils that are latent in ‘ a jurisprudence of conceptions ’ (Hynes v. N. Y. C. R. R. Co., 231 N. Y. 229, 235)..”
*1075 In Badigian v. Badigian (9 N Y 2d 472) Judge Fuld, in his dissenting opinion, discusses several lines of cases in which the court dealt with the problem of the right of a third person to assert the parent-child immunity as a defense. He stated at (p.477):
‘ ‘ In addition, a child may actually, albeit indirectly, obtain redress from his parent for personal injuries resulting from an automobile accident if the child can find and sue a third person who in turn transfers his liability to the parent. A common case of this sort is one in which the father inflicts the injury while driving a vehicle in the course of his employment. The child recovers from his father’s employer and thereupon the latter obtains indemnity from the father in the full amount of the child’s recovery. (See Chase v. New Haven Waste Material Corp., 111 Conn. 377; Briggs v. City of Philadelphia, 112 Pa. Super. Ct. 50; cf. Schubert v. Schubert Wagon Co., 249 N. Y. 253, 257 [wife permitted recovery against husband’s employer].)
‘ ‘ And, finally, an infant may sue his parent directly for personal injuries caused by the father’s careless operation of a car, provided only that it was being used in connection with the father’s business. (See Dunlap v. Dunlap, 84 N. H. 352; Signs v. Signs, 156 Ohio St. 566, supra; Worrell v. Worrell, 174 Va. 11; Borst v. Borst, 41 Wn. 2d 642; Lusk v. Lusk, 113 W. Va. 17.) ”
Schubert (supra) was an action by plaintiff to recover for personal injuries sustained when she was struck by defendant’s automobile which was allegedly negligently driven by plaintiff’s husband while in the service of the defendant. The court held that the disability of the wife or husband to maintain an action against the other for injuries to the person was not a disability to maintain a like action against the other’s principal or master. The court stated (pp. 256-257): “ The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity. A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act though the law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity. ’ ’
Similarly in Sullivan v. Christiensen (191 N. Y. S. 2d 625) a corporate defendant pleaded as a separate defense that the driver of its car, for whose negligence it would be required to respond, was the father of the infant plaintiff and therefore plaintiff could only recover if it showed willful or wanton conduct. The court granted plaintiff’s motion to strike this defense *1076 and stated (p. 626): “Those cases make clear that such a defense is personal to the father and that the master (corporation) is under a distinct and independent liability ’ [249 N. Y. 253, 164 N. E. 43] and may be held even though the servant (father) has a personal defense. Nor is it relevant that the corporation may, if held liable, have a right to indemnification by the father, for the father’s liability for such indemnity is not to his son and does not violate the policy behind the rule of parental immunity. Schubert v. August Schubert Wagon Co., supra; see Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N. Y. 175, 15 N. E. 2d 567; Rozell v. Rozell, 281 N. Y. 106, 22 N. E. 2d 254; 123 A. L. R. 1015. Further, insurance coverage is now required, and that coverage protects both the corporation and the parent-employee.”
The applicability of the rules laid down in the above-cited cases is not altogether clear. In these cases, the court was dealing with liability based on the doctrine of respondeat superior, whereas in the present case the liability is predicated on the statute. The nature of the liability created by section 388 has been discussed at length by the Court of Appeals. In Psota v. Long Is. R. R. Co. (246 N. Y. 388, 393), the court stated that a person who borrowed a car was “no longer a stranger to the owner, but became to this extent the owner’s agent. The owner assumed this liability under the law and took this risk in loaning his car. (Fluegel v. Coudert, 244 N. Y. 393.) But the Legislature went no further; it did not otherwise change any of the rules of liability; that is, it did not extend the liability of the master for the acts of his servant. It placed the borrower of a car in the same position toward the lender as that of master and servant, principal and agent, but it did not increase the liability of the lender beyond that of the master for those acts of his servant coming within the scope of his employment. The Legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied.”
However, in Gochee v. Wagner (257 N. Y. 344, 347) the court stated, when discussing the nature of liability:
“ One who borrows a car of the owner for his own use is a gratuitous (commodatum) bailee. He is not an agent of the owner. He uses the car for his own business or pleasure, and not for any purpose in which the owner is interested. Neither is he a servant of the owner. He is not subject to his direction or control. True it is that, in discussing the effect of section 282-e, it has been said that the borrower occupies the relation of *1077 a servant or agent of the owner, and that the owner’s liability in case of an injury incurred by the borrower’s negligence is the same as it would have been if caused by an agent or servant acting in the owner’s business within the scope of his employment. (Psota v. Long Island R. R. Co., 246 N. Y. 388.)
‘ ‘ Such expressions indicate the nature and extent of the liability, but not the basis or principle upon which the liability is predicated. The statute created a liability where none existed before its enactment. The liability of the owner of a car for the negligence of one to whom he has loaned it rests solely upon the statute; it is a statutory liability. The statute has created a liability where none existed at common law.” (Emphasis supplied.)
In the recent case of Naso v. Lafata (4 N Y 2d 585) the Court of Appeals stated (p. 590): “ The liability of the owner in a section 59 situation is at best vicarious depending, as it does, not on any fault on the owner’s part but purely on the statute ”. The court also acknowledged that the question of whether an owner held liable under the statute was, in fact, negligent was an open one.
In Sikora v. Keillor (supra), the court also discussed the nature of the liability created by the statute. It stated at (p. 8):
‘‘ But quite apart from such reason, in view of the derivative or secondary character of the owner’s liability under section 388 of the Vehicle and Traffic Law (formerly Vehicle and Traffic Law, § 59), it logically follows that if no recovery can be had against the volunteer fireman, there is no right of action against the absent owner whose liability is purely statutory (cf. Naso v. Lafata, 4 N Y 2d 585; Rauch v. Jones, 4 N Y 2d 592).
“ Section 388 of the Vehicle and Traffic Law wrought a change in the common law by attributing the negligence of the operator to the owner of the motor vehicle being used with the owner’s permission (Mills v. Gabriel, 259 App. Div. 60, 61, affd. 284 N. Y. 755). This statute was designed to prevent an owner, who had given permission for the use of his automobile, from escaping liability to injured persons by claiming that the automobile was not being used in his business (Plaumbo v. Ryan, 213 App. Div. 517). The owner of the vehicle is under no liability for the operator’s negligence save that which is imposed on him by the provisions of the Vehicle and Traffic Law. Since the statute is in derogation of the common law, it may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied ’ (Psota v. Long Is. R. R. Co., 246 N. Y. 388, 393). * * *
*1078 “ The case (Schubert v. Schubert Wagon Co., 249 N. Y. 253) cited in the opinion of Special Term, does not control the situation at bar. In that case liability was imposed under the rule of respondeat superior. The question of the vicarious statutory liability of an absent automobile owner was not involved.”
The question is whether the difference in the nature of the liability imposed by the statute as opposed to liability based on respondeat superior is fatal to plaintiff’s position. This court is of the opinion that it is not. The defense that an unemancipated infant is barred from suing his parent for the parent’s negligence is a defense which arises from facts personal to the relationship. The inability to sue is not rested upon the premise that the father was not negligent, and the personal relationship does not absolve the father of his wrongful conduct although the law exempts him from liability for the damage. As the court said in Schomber v. Tait (207 Misc. 328, 329): “ Therefore the owner to whom the law imputes the wrongful conduct of the operator may be held to answer for the wrongful acts committed. There is no personal incapacity of the infant to maintain an action against him and he may not seek refuge behind the doctrine of family unity.” (Emphasis supplied.)
The court’s opinion that the defense is a personal one is based upon public policy considerations. The purpose underlying the parent-child immunity is to prevent litigation from disrupting the family and thus preserve domestic tranquillity and parental discipline. To allow this suit against a third person will in no way contravene this policy.
In recent years, there has been a tendency to erode the immunity. (See the dissent of Judge Fuld in Badigian v. Badigian (9 N Y 2d 472, supra) for a comprehensive discussion of the erosion of the principle and of the unsuitability of its application in the 20th century.)
The decision on this motion, however, in no way continues the erosion of this principle, since this court is of the opinion that here a fact situation is presented to which the immunity was never intended to apply and to which it has never been applied by the courts of this State.
Accordingly, the motion to dismiss the main cause of action and the second cause of action, which is for loss of services, is denied.