ERNEST A. ROZELL, an Infant, by ERNEST D. COWLES, His Guardian ad Litem, Respondent, *v.* EVELYN D. ROZELL, an Infant, by GEORGE ROZELL, Her Guardian ad Litem, Appellant

Argued May 16, 1939; decided July 11, 1939.

*Walter A. Chambers* for appellant.

*Walter A. Fullerton* and *James A. Leary* for respondent.

RIPPEY, J. On May 2, 1937, at about 1:00 P. M., the plaintiff, a boy then twelve years of age, was a passenger in an automobile being driven by defendant, his sister, then sixteen years of age, when a collision occurred between the car in which they were riding and another car due, as the jury have found, to the negligence of the defendant in the operation of the car. For the injuries received, plaintiff has recovered. The judgment entered upon the verdict of the jury has been unanimously affirmed by the Appellate Division and defendant has appealed by permission of this court.

Defendant in her answer denied the charge of negligence against her set up in the complaint and alleged, and the

testimony shows, that both infants were living with their father and mother at the time of the accident and were being supported by their father, that neither had any separate estate and that both were under the control and direction of the father. Neither was married. On the issues here involved, it seems of little moment whether they were or were not emancipated. An infant is generally responsible for his own torts (*Tifft* v. *Tifft*, 4 Denio, 175; *Steinberg* v. *Cauchois*, 249 App. Div. 518; *Williams* v. *Hays*, 143 N. Y. 442, 448). Persons who are not members of the family when injured through the tortious negligence of minors may recover damages against them by way of compensation for injuries sustained. The principle is not affected by the mere fact that the injuries are caused by the negligent operation of an automobile. No logical reason nor reported authority exists to indicate that the rule of liability should be changed when brothers and sisters are involved.

As a ground for reversal, the defendant asserts that the action is not maintainable because public policy forbids. Neither the Constitution, statutes nor judicial decisions of the State directly or by fair implication declare any State policy against which the maintenance of such an action offends. In the absence of such a declaration, it is asserted that such an action should not be permitted because litigation between brothers and sisters seriously disturbs the family relationships and is destructive of the family unit, which is still the basis of society, and, if permitted, will be a prolific incentive to fraud, especially in personal injury cases where the owner or operator of the automobile is protected by insurance from liability.

The family has been for centuries the fundamental unit of society. The modern family, however, is far different in structure, status and internal social and legal relationship than the family of ancient times. Rigorous restrictions upon the rights and duties of its members, not only in their relations with those outside of the family unit but, as well, with one another have gradually moderated and, in some

respects have totally disappeared until our common law and constitutional and statutory sanctions affecting family relations are more in harmony with the common sense of modern life. "The modern tendency of decided cases is to ignore fictions and deal with things as they are" (per POUND, J., in *Drobner* v. *Peters*, 232 N. Y. 220, 223).

Diligence of counsel and our own investigation have brought to our attention many analogous references. The relation between the sexes has radically changed. Man and woman are now upon a plane of substantial legal equality. Although one spouse has been held incompetent to sue the other to recover damages for a tort on the theory that husband and wife are one (*Young* v. *Young*, [Eng.] 5 Fraser 330; *Phillips* v. *Barnet*, 1 Q. B. D. 436; *Harper* v. *Harper*, [1929] S. C. 220; *Mertz* v. *Mertz*, 271 N. Y. 466), the law in Connecticut is to the contrary (*Mertz* v. *Mertz, supra*) and the Legislature of this State has now changed that rule (Laws 1937, ch. 669, amdg. Domestic Relations Law, § 57 [Cons. Laws, ch. 14]). No such doctrine of identification exists between brothers and sisters or parent and child. The sons and daughters in the family are no longer subject to the *patria potestas*. An infant may now of his own motion maintain an action for negligence against his grandmother (*Spaulding* v. *Mineah*, 264 N. Y. 589) and representatives of a deceased brother against his infant sister (*Lavender* v. *Lavender*, 261 N. Y. 574). As between a parent and an unemancipated minor child, the weight of authority seems to be that an action still will not lie by one against the other for personal injury due to the tortious act of the latter (*Sorrentino* v. *Sorrentino*, 248 N. Y. 626; *Ciani* v. *Ciani*, 127 Misc Rep. 304; *Mesite* v. *Kirchenstein*, 109 Conn. 77; *Schneider* v. *Schneider*, 160 Md. 18; *Hewlett* v. *George*, 68 Miss. 703; *McKelvey* v. *McKelvey*, 111 Tenn. 388; *Smith* v. *Smith*, 81 Ind. App. 566; *Foley* v. *Foley*, 61 Ill. App. 577; *Roller* v. *Roller*, 37 Wash. 242; *Small* v. *Morrison*, 185 N. C. 577; *Wick* v. *Wick*, 192 Wis. 260; *Matarese* v. *Matarese*, 47 R. I. 131; *Bulloch* v. *Bulloch*, 163 S. E. Rep. [Ga.] 708; *Elias* v. *Collins*, 237 Mich. 175;

*Mannion* v. *Mannion,* 129 Atl. Rep. [N. J.] 431; *Taubert* v. *Taubert,* 103 Minn. 247), although, on principle and authority, a cause of action lies in favor of a mature or emancipated minor child against the parent or by a parent against an emancipated son to recover damages for willful or active negligence (1 Beven on Negligence in Law [4th ed.], pp. 229–232; *Lo Galbo* v. *Lo Galbo,* 138 Misc. Rep. 485, 488; *Wells* v. *Wells,* 48 S. W. Rep. [2d] [Mo.] 109, 111; *Taubert* v. *Taubert, supra; Fowlkes* v. *Ray-O-Vac Co.,* 183 S. E. Rep. [Ga.] 210; *Dunlap* v. *Dunlap,* 150 Atl. Rep. [N. H.] 905; *Lusk* v. *Lusk,* 113 W. Va. 17; cf. Harper on the Law of Torts § 285, pp. 626, 627). Immunity of the responsible parent to suit vanishes where there is injury to the infant's property (see Beven on Negligence, *supra;* Domestic Relations Law, §§ 80 and 83, as amd.; Real Property Law, § 522 [Cons. Laws, ch. 50];), and the ancient tradition that a son, whether emancipated or not, may not sue his father to recover damages for the negligence of the latter, whether active or passive if there may be such a distinction, has recently been destroyed in Scotland (*Young* v. *Rankin,* [1934] S. C. 499). Elsewhere, suits between brother and brother have been maintained (*Beilke* v. *Knaack,* 207 Wis. 490; *Munsert* v. *Farmers Mut. Automobile Ins. Co.,* 281 N. W. Rep. [Wis.] 671), an infant may recover damages from her maternal aunt for the latter's negligence (*Clasen* v. *Pruhs,* 69 Neb. 278), a minor may recover from her stepmother for an assault (*Treschman* v. *Treschman,* 28 Ind. App. 206), and as stated in the headnote, a " child cannot be denied right to sue parent for tort because of effect on discipline and family life " (*Dunlap* v. *Dunlap, supra*).

It is unnecessary to pile up further analogous references. Allusions to others of similar import might be extensively made. Persuasive are the analogies cited and they are not too remote. Notwithstanding such changes from tradition, predictions of dire results to the continued peace and amity of the family relationship have not been sustained. Legal prohibitions alone will not hold together the family life. There is something finer and deeper than artificial compul-

sions that makes the family relationship as strong and causes it to be as zealously maintained as in the ancient age. Family ties between brother and sister are as strong today as ever. If permitting a suit by a brother against a sister to recover for injuries received by the former through the tortious negligence of the latter is to tear asunder the ties that sustain the family unit, as predicted by appellant, then it must indeed be held together by a slender thread. Under present-day realities unrelated to bygone traditions, the past ought not to dictate legal relations between them. The " unquestioned principle of jurisprudence from very early times that there can be no wrong without a remedy " (1 Cyc. p. 700) is still in force with all its ancient vigor. There is no occasion here to establish an exception to that maxim by judicial legislation vaguely gathered from the dubious implications of a legal institution. There is no sound public policy against enforcing it.

It is also urged that the courts should wait until there is legislative sanction for such an action (*Mertz* v. *Mertz*, 271 N. Y. 466). There is no rule of law existing today in this State by which actions between brothers and sisters for tortious negligence may not be maintained. We are not changing any existing rule of law or modifying or upsetting any judicial decision. It is not necessarily the function of a court to refuse to declare a rule of conduct until the economic and social order of the day forces its declaration by the State. The genius of the common law lies in its flexibility and in its adaptability to the changing nature of human affairs and in its ability to enunciate rights and to provide remedies for wrongs where previously none had been declared (*Oppenheim* v. *Kridel*, 236 N. Y. 156). " The common law," says CRANE, J., in the *Oppenheim* case at page 164, " is not rigid and inflexible, a thing dead to all surrounding and changing conditions, it does expand with reason. The common law is not a compendium of mechanical rules written in fixed and indelible characters, but a living organism which grows and moves in response to the larger and fuller development of the nation."

Legalistic doctrines and ancient traditions like those of identity of husband and wife and family unity between parent and child and other members of the household and intimate legal or social relationship between others as affecting the question of the propriety for allowing suit for personal injuries by one against another are and have been vanishing with the advent of modern means of transportation and the spread of insurance against liability of the wrongdoer and protection for the sufferer. We cannot bury our heads in the sand and ignore the new tendencies and conditions so notorious. Insurance as protection to the sufferer is now a matter of common knowledge. Of course, that fact alone creates no right to sue where one otherwise would not exist (*Luster* v. *Luster*, 13 N. E. Rep. [2d] [Mass.] 438, 440; *Schneider* v. *Schneider*, *supra*). But I am unwilling to admit that sanction to the maintenance of such an action between brother and sister is any more of an incentive to fraud than when a similar action was sanctioned between husband and wife, between an emancipated son and his father, between grandmother and grandchild, between owner and guest, or between intimate friends. No warrant is found for any prediction that brothers and sisters will flock into the courts on fictitious claims through mere judicial recognition of the right of one to sue the other in personal injury cases. Common honesty inherent in the family unit presents an effective barrier. If it should appear that there is any foundation for the suggestion, a means of protection may be found in diligence on the part of the insurance carriers to ferret out and expose the fictitious claims and reliance may be placed on our courts and juries to detect and prevent a fraud.

Finally, it is urged that lack of precedent for such an action must control. In *Kujek* v. *Goldman* (150 N. Y. 176, 178), apropos to this objection, it is said: " While no precedent is cited for such an action, it does not follow that there is no remedy for the wrong, because every form of action when brought for the first time must have been without a precedent to support it. Courts sometimes of necessity

abandon their search for precedents and yet sustain a recovery upon legal principles clearly applicable to the new state of facts, although there was no direct precedent for it, because there had never been an occasion to make one." It is not a question here as to whether there may be a precedent to cite for permission to maintain the action " but whether the defendant inflicted such a wrong upon the plaintiff as resulted in lawful damages" (*Kujek* v. *Goldman, supra*, p. 179), for " the law will never suffer an injury and a damage without a remedy" (p. 178). The law is not static. Even though the past furnishes no current declaration of the right to maintain such an action, neither reason nor logic dictates that it must be held that no such cause of action exists. The declaration of legal rights arises when the occasion presents itself for such a declaration, when social and economic progress commands that such a one be made. If we are to be tied down to precedent without exception the law must remain static, something inflexible and unadaptable to new or changing conditions as they arise.

The judgment appealed from should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur; O'BRIEN, J., taking no part.

Judgment affirmed.