ROSALYN D. IMMFR, PLAINTIFF-APPELLANT, v. HENRY P. RISKO, DEFENDANT-RESPONDENT, AND THOMAS A SIMONSEN, DEFENDANT.

Argued May 18, 1970—Decided July 10, 1970.

*Mr. Milton D. Liebowitz* argued the cause for the Plaintiff-Appellant (*Messrs. Liebowitz, Krafte & Liebowitz,* attorneys; *Mr. Milton D. Liebowitz* on the brief).

*Mr. Frank Fink* argued the cause for the Defendant-Respondent (*Messrs. Stevens* and *Mathias,* attorneys; Mr. *Frank Fink* on the brief).

The opinion of the Court was delivered by

Proctor, J. This case deals with the question of responsibility for injuries to one's spouse caused by the negligent operation of a motor vehicle.

On April 7, 1968, an automobile operated by the defendant Henry P. Risko collided with another automobile driven by the defendant Thomas A. Simonsen. The plaintiff, the former Rosalyn Immer, was a passenger in Risko's automobile and she brought a negligence suit against both Risko and Simonsen. The latter then cross-claimed against Risko for contribution under the Joint Tortfeasors Contribution Law. *N. J. S. A.* 2A:53A–1 *et seq.* Sometime after the suit was instituted the plaintiff and Risko were married. Risko then moved for summary judgment against the plaintiff and against the co-defendant, Simonsen, on the ground that the action and the cross-claim were barred by the doctrine of interspousal immunity. The motion was granted. On plaintiff's appeal,[1] the Appellate Division affirmed in an unreported opinion. That court felt compelled to follow our decision in *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1 (1958). We granted plaintiff's petition for certification. 55 *N. J.* 451 (1970).

On this appeal plaintiff urges that the doctrine of interspousal immunity is "outmoded" and should be discarded.

---

[1] Simonsen did not appeal.

She also argues that if we continue to apply the immunity doctrine we should at least reverse *Koplik, supra,* which held that the immunity doctrine applies to prenuptial torts. In view of our resolution of the first issue, we need not reach plaintiff's second contention.

At common law, a husband and wife were regarded as one, the legal existence of the wife being merged with that of the husband. Thus, one spouse was precluded from maintaining an action against the other at law or equity for wrongful conduct whether intentional or negligent. 1 *Blackstone Commentaries* 442. See *Kennedy v. Camp,* 14 *N. J.* 390, 396 (1958); *Prosser, The Law of Torts* 879–80 (3d ed. 1964). In accord with the majority of jurisdiction, the courts of this State have continued to apply this common law immunity in negligence actions. *E. g., Kennedy v. Camp,* 14 *N. J.* 390 (1954); *Koplik v. C. P. Trucking Corp., supra.* We have done so despite a mounting wave of criticism by all the leading commentators on the subject. *E. g.,* Albertsworth, "Recognition of New Jersey in the Law of Torts," 10 *Calif. L. Rev.* 461 (1922); McCurdy, "Torts Between Persons in Domestic Relations," 43 *Harv. L. Rev.* 1030 (1930); McCurdy, "Personal Injury Torts Between Spouses," 4 *Vill. L. Rev.* 303 (1959); 1 *Harper & James, Torts* 645–46 (1956); *Prosser supra* at 879-890. The above authorities and numerous others have been cited in the dissenting opinions of Justice Jacobs in *Koplik v. C. P. Trucking Corp., supra,* 27 *N. J.* at 13–22 and *Heyman v. Gordon,* 40 *N. J.* 52, 55–60 (1963), and there is no purpose in repeating the list here. An increasing minority of courts in other jurisdictions have abandoned complete interspousal immunity. Dean Prosser lists 19 jurisdictions as having adopted the "minority rule." *Prosser* at 885. Since his list was compiled, Utah has reverted to its earlier position of denying such suits, *Rubalcava v. Gisseman,* 14 *Utah 2d* 344, 384 *P. 2d* 389 (1963), overruling *Taylor v. Patten,* 2 *Utah 2d* 404, 275 *P. 2d* 696 (1954), and Minnesota has adopted the minority rule, *Beaudette v. Frana,* 285 *Minn.* 366, 173 *N. W. 2d* 416

(1969). Although the number of courts opposing the immunity doctrine appears to be growing, our own decision on this matter will not be predicated on a trend in one direction or the other, but on our own view of the policies involved. Since 1958 this Court has been closely divided on the issue. See *Koplik v. C. P. Trucking Corp., supra; Orr v. Orr,* 36 *N. J.* 236, 238 (1961). The writer of this opinion has joined with the majority in affirming the continuing validity of the immunity doctrine. For the reasons which follow, I have changed my mind and now believe that the immunity doctrine, at least so far as it applies to automobile negligence cases, has no place in our modern society.

The doctrine of interspousal immunity had its early roots in the common law unity concept mentioned above. This fictitious concept was largely dissipated by the widespread enactment of "Married Women's Acts" in the mid-nineteenth century. These acts were designed primarily to secure a married woman a separate legal identity and to grant her some of the rights theretofore denied her at common law. McCurdy, "Torts Between Persons in Domestic Relations," *supra* at 1036–50. New Jersey's Married Persons' Act accords generally with the legislation of other states. See *N. J. S. A.* 37:2–1 *et seq.* However, it contains the following provision:

> "Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter." *N. J. S. A.* 37:2–5.

The meaning of this provision has been the subject of numerous decisions. See *Koplik v. C. P. Trucking Corp., supra,* 27 *N. J.* at 4–7, and cases cited therein. In *Kennedy v. Camp, supra,* this Court held that the above provision did not alter the common law unity of interests of the spouses and hence a husband would not be liable to his wife for injuries caused by his negligent driving of an automobile. *Id.,* 14 *N. J.* at 397. *Kennedy* did not hold that the provision

required application of the immunity doctrine but merely that the common law continued unchanged.[2] This reasoning was in accord with earlier cases which held that that provision did not *disturb* the common law. *Hudson v. Gas Consumers' Assn.*, 123 *N. J. L.* 252, 253 (E. & A. 1939); *Freitag v. Bersano*, 123 *N. J. Eq.* 515, 516 (Ch. 1938); *Drum v. Drum*, 69 *N. J. L.* 557, 558 (Sup. Ct. 1903). In *Koplik, supra*, however, this Court held in a four to three decision that "the common law interspousal negligence tort immunity has been perpetuated [by *N. J. S. A.* 37:2–5], and that it has been made a part of our statutory law as well." 27 *N. J.* at 6. Writing for the minority, Justice Jacobs strongly objected to this construction of the statute and expressed his opinion that there was nothing in the provision which either expressly or impliedly incorporated the common law immunity doctrine into the statutory law of the State. In his view the provision merely left the common law "intact with its inherent capacity for later judicial alteration." *Id.* at 18–19.

Three years later, in *Long v. Landy*, 35 *N. J.* 44 (1961), this Court was faced with the question of whether a wife could sue her husband's estate for injuries she received as a result of the decedent's negligent operation of an automobile. In a unanimous decision we held that recovery should not be barred by the immunity doctrine after the death of the tortfeasor spouse. Justice Haneman, writing for the Court, noted that although torts did not survive the tortfeasor at common law, such actions were now permitted by statute. *N. J. S. A.* 2A:15–1. Therefore, the provision in the Married Persons' Act which dealt with the common law did not contemplate such a suit. But more importantly,

---

[2] Indeed, it was argued by the plaintiff in *Kennedy* that the provision did away with the common law immunity. But the Court rejected this argument reasoning that "such a radical change in the common-law philosophy of marital union, identity, and integrity cannot be made to rest upon statutory provisions of uncertain and doubtful import." 14 *N. J.* at 397.

the Court construed *N. J. S. A.* 37:2–5 not as freezing the common law immunity doctrine, but as serving "solely to incapacitate or disable a wife from suing her tortfeasor mate *during the existence of the reasons which underlie the common law doctrine.* (emphasis added)." *Id.* at 50–51. The Court also noted that "when the policy behind a rule no longer exists the rule should disappear." We would, of course, not have the option of examining the reasons behind the rule or even whether the reasons should apply to a particular case if the immunity were mandated by statute. Thus, we held that the common law immunity doctrine was not rigidly incorporated into our statutory law; immunity should apply only where the reasons for its existence continue. It seems clear that *Long v. Landy* undercuts *Koplik's* theory of incorporation. *Long v. Landy* tells us that when the reasons for the immunity are absent, a cause of action should be recognized and enforced by our courts. In other words, the statute did not incorporate immunity, but rather the common law with its inherent capacity for change. And the Court in *Long* recognized this capacity for change. In noting that the immunity rule "should disappear" when the policy behind it no longer exists, it quoted Chief Justice Vanderbilt's often repeated statement in *State v. Culver,* 23 *N. J.* 495, 505 (1957), *cert. denied* 354 *U. S.* 925, 77 S. Ct. 1387, 1 *L. Ed. 2d* 1441 (1957) regarding the fluidity of the common law:

> "The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice." *Id.* at 50–51.

This analysis was reaffirmed by the majority of this Court in *Heyman v. Gordon,* 40 *N. J.* 52, 54 (1963).

Thus, in *Sanchez v. Olivarez,* 94 *N. J. Super.* 61 (1967), the Law Division held, relying on *Long,* that divorce removes the interdiction against interspousal immunity in a negligence action. This result was reached although at common

law neither spouse could maintain a tort action against the other even when the action was brought after the marriage relationship had been terminated by separation or divorce. *E. g., Philips v. Barnet, L. R.* 1 *Q. B.* 436 (1876), cited in *Kennedy v. Camp, supra,* 14 *N. J.* at 396. See also *Prosser, supra* at 882, n. 40; 1 *Harper & James, supra* at 644.

In light of the above post-*Koplik* cases, we are free to determine whether the reasons behind the immunity are present in the case before us. And in doing so, we must re-examine the reasons behind the doctrine itself as we are compelled to do in any case involving an attack upon a common law principle before our Court. See, *e. g., Smith v. Brennan,* 31 *N. J.* 353 (1960); *Faber v. Creswick,* 31 *N. J.* 234 (1959); *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29 (1958).

Although the original basis for the common law immunity doctrine was the theory of legal identity of husband and wife, this metaphysical concept cannot be seriously defended today. See, *e. g., Long v. Landy, supra,* 35 *N. J.* at 50, where we referred to that concept as "artificial and technical." Yet the proponents of immunity have found additional reasons for sustaining the doctrine. The two reasons most frequently mentioned are: 1) "the disruptive effect upon the harmony of the family" and 2) "the possibility of fraudulent and collusive litigation against the frequent real party in interest — the insurance carrier." *Id.* See generally *Prosser, supra* at 883–84, 888–90.

Regarding the threat to domestic peace, we are doubtful that the marital relationship will be any more disturbed by allowing a cause of action than by denying it. Where one's conduct is such that his spouse elects to sue him, if there is no insurance, the damage probably has been already done. A person would not sue his spouse if there were perfect harmony, and it is unlikely that adjudication of the rights involved will worsen the relationship. Moreover, it is difficult to understand why automobile negligence actions are more disruptive than property and contract actions brought

against spouses. Yet, as Justice Jacobs observed in *Koplik, supra,* 27 *N. J.* at 16, our reports contain many equity cases in which wives have maintained such actions against their husbands. In these circumstances, a denial of the right to bring an interspousal action is as likely to disrupt the family harmony as is the right to maintain the action. See *Prosser, supra* at 889.

But realistically, it must be remembered when dealing with the question of conjugal harmony that today virtually every owner of a motor vehicle with a sense of responsibility carries liability insurance coverage.[3] The presence of insurance militates against the possibility that the interspousal relationship will be disrupted since a recovery will in most cases be paid by the insurance carrier rather than by the defendant spouse. In fact, it is ironic that the presence of insurance has spawned the second rationale, *i. e.,* that of protecting the insurance carriers against fraud and collusion. That rationale belies the possibility that domestic harmony will be disturbed since its very premise is that the interspousal relationship is so harmonious that fraud and collusion will result. Domestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage. The cost of making the injured spouse whole would necessarily come out of the family coffers, yet a tortfeasor spouse surely anticipates that he will be covered in the event that his negligence causes his spouse injuries. This unexpected drain on the family's financial resources could likely lead to an interference with the normal family life. And it is doubtful that this void in insurance coverage would comport with the reasonable expectations of the insured that this Court has so often sought to protect. See, *e. g., Perrine v. Prudential Insurance Co.,* 56 *N. J.* 120 (1970): *Klos v. Mobil Oil Co.,* 55 *N. J.* 117 (1969); *Kievit v. Loyal Protective Life Ins.*

[3]The Department of Motor Vehicles indicates that between June 1, 1969 and May 31, 1970, 98.24% of New Jersey motor vehicle owners registered their vehicles as insured.

*Co.,* 34 *N. J.* 475 (1961). See also Keeton, "Insurance Law Rights at Variance with Policy Provisions," 83 *Harv. L. Rev.* 961 (1970). In short, the immunity doctrine cannot be fairly sustained on the basis that negligence suits between husbands and wives will disrupt the harmony of the family.

The argument concerning the possibility of fraud and collusion is, however, more difficult to answer. It is this argument which has in the past persuaded me to continue to apply the immunity doctrine in negligence cases. Of course, there is a possibility of fraud or collusion in every negligence action where the tortfeasor is insured. The degree of danger depends upon the relationship of the parties. The closer the parties are to each other, the greater is the danger. It is for this reason that many states have guest statutes.[4] In the family context, the danger of collusion is the greatest of all. Not only are the parties in a close personal relationship, but any recovery will inure to the benefit of the entire family and the failure to recover will affect the entire family adversely. The simple policy question is whether the possibility of fraud by some should bar the legitimate claims of others assuming that the number of fraudulent claims will be greater here than it is in other contexts.

There are several reasons why I no longer believe that the possibility of fraudulent claims forms a sufficient basis on which to rest the immunity doctrine. The first reason stems from our judiciary's experience with the host-guest relationship. The advent of the automobile on the American

---

[4]These statutes which immunize a host-driver from suit for negligent injuries to his guest-passenger has also been widely criticized by both courts and commentators for erecting an unnecessary barrier against accountability for one's torts. Leflar, "Choice Influencing Considerations on Conflicts of Law," 41 *N. Y. U. L. Rev.* 267, 278. 307 (1966); *Clark v. Clark,* 107 *N. H.* 351, 222 *A.* 2d 205. 210 (1966). One commentator has gone so far as to call such statutes unconstitutional. Lascher, "Hard Law Makes Bad Cases—Lots of Them (The California Guest Statute)," 9 *Santa Clara Law.* 1 (1968).

scene created numerous legal problems. One problem was to determine the standard of care owed by a host to his guest. In the 1920's and 1930's many states dealt with the problem legislatively by enacting guest statutes which created a standard ranging from gross negligence to willful injury. See 2 *Harper & James, supra* at 950 *et seq.; Prosser, supra* at 190–91. These statutes were predicated mainly on the possibilities for collusion implicit in the host-guest relationship. *E. g., Hardwick v. Bublitz,* 253 *Iowa* 49, 54, 111 *N. W. 2d* 309, 312 (1961). New Jersey never enacted a guest statute, and the decision of what duty a host should owe his guest was left to the judiciary which first dealt with the problem in *Lutvin v. Dopkus,* 94 *N. J. L.* 64 (Sup. Ct. 1920). In *Lutvin,* the court held that a guest who asked for a ride was distinguishable from a guest who was invited for a ride in that the former could recover only for injuries wantonly or willfully inflicted. In *Cohen v. Kaminetsky,* 36 *N. J.* 276 (1961), this Court, as presently constituted, unanimously overruled *Lutvin* and discarded the distinction between a guest who requested a ride and a guest who was invited for a ride. Of more importance for present purposes, was our rejection of defendant's argument that we should adopt a uniform standard for liability which would require more than a breach of ordinary care. The defendant contended that the great opportunity for collusion between host and guest required that a host be immunized for mere breaches of ordinary care. Chief Justice Weintraub, speaking for the Court, refuted this contention:

"Nor are we impressed with the further thought that the prospect of collusion should lead to a different standard of care. We see no inevitable connection between the subjects. It is the regular business of the courts to find the truth. We ought not deny what should be due the many for fear that the judicial process cannot weed out the spurious claims of a few." *Id.* at 283.

Much time has passed since our decision in *Cohen.* Yet the results predicted by the defendant have failed to ma-

terialize. There have undoubtedly been some fraudulent claims asserted, but our trial courts have been able to deal with the problems effectively. And perhaps of more importance, a great many meritorious claims have been disposed of during the same period of time.

We recognize that the host-guest relationship is not strictly analogous to that of husband and wife. Even states which have guest statutes generally immunize the host from suit only for ordinary negligence. A higher degree of wrongdoing is still actionable. In cases between husband and wife, there has been full immunity. But this should not make any difference regarding the considerations of preventing collusion which form the main rationale for both types of immunity. It is true that claims between husband and wife produce greater opportunity and motivation for fraud than do claims between host and guest. But in other contexts, where the opportunity and motivation was just as great, we have allowed the claim. See *Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (E. & A. 1939) and *Eule v. Eule Motor Sales,* 34 *N. J.* 537 (1961). In *Hudson,* a wife was permitted to sue her husband's employer for injuries she received as a result of her husband's negligent conduct in the course of his employment. The court held that the immunity doctrine was not applicable even though it was conceded that the husband's employer could recover from the husband all sums found to be owing to the plaintiff. It reasoned that even though the action could produce family discord, the claim was still actionable since the employer's right over against the husband arose from an independent duty rather than subrogation.[5] Despite this

5"The respondent argues that to allow recovery by a wife against an employer for the tort of the husband, under these circumstances is to do violence to the common law rule; that the purpose of the public policy behind the common law rule, *i. e.*, the preservation of domestic peace and harmony, will be jeopardized if recovery may be had by the wife against the master for her husband's legal wrong, since the master, if he be made to respond in damages, may recover his loss from the servant for the servant's breach of duty. But, even

theoretical basis for the decision, the real reason was the Court's awareness that the liability of the employee to his employer was not a serious threat since employers routinely purchase insurance protection and both parties expect the employer to save harmless the employee. See discussion in *Eule v. Eule Motor Sales, supra* at 540–541. The danger of collusion and fraud was not discussed, but it is readily apparent that the danger was as great there as in other suits between husbands and wives. And in *Eule, supra,* this Court held that a wife may sue a partnership, of which her husband is a member, for injuries negligently inflicted by him. There the Court conceded that "if the partnership assets are reached, something of value belonging to the husband is directly implicated" and that " the husband here would be called upon to contribute if partnership assets should be insufficient to meet partnership liabilities." 34 *N. J.* at 543. Thus, in the absence of insurance, the domestic harmony would be as threatened in the same way as cases in which the husband is the sole defendant. Realistically, however, most partnerships carry liability insurance just as do employers, and the real problem was again the fear of collusion and fraud. Nevertheless, the action was allowed despite the dissenters' contention that the "very real danger of fraud and collusion in the face of the prevalence of liability insurance must be recognized." Id. at 553. These cases demonstrate that we have in the past permitted suits which affect interspousal rights even where there is a danger of fraud and collusion.

In any event, we do not believe that the possibility of fraud should any longer be deemed sufficient to bar all interspousal tort claims without at least an opportunity to determine whether our courts can deal adequately with the problem. And the experience of other states which have

so, the master's right of recovery does not depend upon his succeeding to the rights of the injured party by way of subrogation." 123 *N. J. L.* at 254.

abandoned the immunity (see *Balts v. Balts,* 273 *Minn.* 419, 430, 142 *N. W. 2d* 66, 73 (1966)) and of our own state with the host-guest relationship tends to indicate that the problems can be dealt with. It is, after all, the business of our courts to deal with such problems and we ought not assume the task is too onerous without some basis in experience for the assumption. If for some unexpected reason our faith in the ability of judges and juries to weed out fraudulent claims in particular cases proves wrong, our courts are free to readopt the immunity doctrine. That is the nature of the common law. Or the Legislature may act. But we ought not continue to maintain a doctrine for fear of an unhappy consequence when what knowledge we have tells us that our fear may not be justified. As the Supreme Court of Washington said in a case involving an analogous situation (a parent-child suit):

> "The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. Rozell v. Rozell, supra [281 N. Y. 106, 22 N. E. 2d 254, 123 A. L. R. 1015]. If those processes prove inadequate, the problem becomes one for the Legislature. * * * Courts will not immunize tortfeasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the legislature to deal with the problem as a question of public policy." Borst v. Borst, 41 Wash. 2d 642, 653–654, 251 P. 2d 149, 155.

This language was quoted approvingly in *Klein v. Klein,* 58 Cal. 2d 692, 26 *Cal. Rptr.* 102, 376 P. 2*d* 70 (1962) in which the Supreme Court of California abandoned the doctrine of interspousal immunity in negligence cases. See also *Smith v. Brennan, supra,* where this Court, in another context, quoted the following language from the dissenting opinion of Chief Justice Brogan of our former Supreme Court in *Stemmer v. Kline,* 128 *N. J. L.* 455, 467 (E. & A. 1942):

"The same objection may be advanced against many law actions that are encountered day after day in our trial courts. Many of them are unjustified but the fact that some people will institute illfounded or fraudulent causes of action is no reason to deny a cause of action where by a preponderance of the credible evidence it appears that injury has resulted from the negligence of another."

In a day when automobile accidents are unfortunately becoming so frequent and the injuries suffered by the passengers are often so severe, it seems unjust to deny the claims of the many because of the potentiality for fraud by the few. Moreover, there is something wanting in a system of justice which permits strangers, friends, relatives, and emancipated children to recover for injuries suffered as a result of their driver's negligence but denies this right to the driver's spouse and minor children who are also passengers in the same vehicle.

Permitting interspousal suits in automobile negligence actions represents a change in my earlier views, but the passage of time has convinced me there must be a change. As was said by the late Justice Frankfurter, dissenting in *Henslee v. Union Planters Nat. Bank*, 335 *U. S.* 595, 600, 69 S. Ct. 290, 93 *L. Ed.* 259, 264 (1949): "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." And I might add, one should not continue to support a doctrine he no longer believes is valid simply because he at one time had a contrary view. In departing from the old rule, we explicitly limit our decision to claims arising out of motor vehicle accidents. There are obviously some areas in the relationship between husband and wife that courts should not become involved in. We cannot decide today any more than what is before us, and the question of what other claims should be entertained by our courts must be left to future decisions.

For the reasons stated above, the judgment of the Appellate Division is reversed and the matter is remanded for trial.

FRANCIS, J. (dissenting).

I adhere to the decision of the then majority of this Court in *Koplik v. C. P. Trucking Corp.*, 27 *N. J.* 1 (1958). The present majority sanction damage suits between husbands and wives and between unemancipated children and their parents (in the companion case of *France v. A. P. A. Transport Corp.*, 56 *N. J.* 500 (1970), decided today) based on charges of alleged negligence. Judicial notice of the presence of insurance coverage on most automobiles is said to provide the primary reason for the Court's revised view. In my judgment, the new principle is contrary to public policy; it is conducive to and provides encouragement for collusion, perjury and fraud, and it puts the pursuit of dollars above morality.

It is naive to believe that such suits, nominally by wives and husbands against each other, or by unemancipated children against their parents or by parents against unemancipated children, will be true adversary proceedings. There will be only one real adversary, an unnamed one — the insurance company — and with rare exceptions that adversary will be impotent to defend.

My colleagues overlook the fact that insurance policies on automobiles contract to provide protection for owners and drivers against damages arising out of liability imposed by law. That means a just liability arising from the true existence of negligent operation of the vehicle at the time of the accident. It does not mean either a liability assumed by the driver or one agreed upon between him and his spouse or child in order to make a money recovery reasonably certain.

The principle which now becomes the law in effect transforms the ordinary automobile liability policy into one providing accident and health coverage -- where fault plays no part in the recovery of benefits. Conceivably protagonists of the current movement toward liability without fault in automobile accidents might take comfort in the Court's new view. From their standpoint, it can be argued that they have been moved one step closer to their goal.

The majority take pains to show their realization of the great danger of collusion arising from their decision in this case. But they say that our trial courts and juries can be counted on to discover collusion and to deny recovery accordingly. They further suggest that if experience demonstrates that such optimism is misplaced, reinstatement of the immunity can be considered. Who has ever been able to see how much of the iceberg is below the surface? But there are very few people who do not believe that much more of it lurks below the surface than is visible above.

The majority suggest that certain later decisions of our Court and the Appellate Division have "undercut" *Koplik.* I think not. In *Long v. Landy,* 35 *N. J.* 44 (1961), an automobile case, we allowed a wife to sue her deceased husband's estate on account of injuries she received in an accident which she claimed was due to his careless driving. Obviously, there was no domestic tranquility to disturb after his death, and no one can collude with a dead man. So too with *Sanchez v. Olivarez,* 94 *N. J. Super.* 61 (1967) where it was said in a similar negligence action that divorce removes the interspousal immunity. Even the most ardent supporter of domestic tranquility would not expect the state to continue after divorce, nor would he consider it likely that one ex-spouse would engage in perjurious collusion with the other, even to mulct an insurance company. Nor do the cases of *Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (E. & A. 1939) and *Eule v. Eule Motor Sales,* 34 *N. J.* 537 (1961), cited by the present majority, undercut either the principle or the morality of *Koplik.* In fact, apart from legal doctrine, each of the situations had its own peculiar built-in psychological restraint against collusion with the husband whose alleged negligence was the thesis upon which the wife predicated her claim against the husband's employer in the one case and his partnership in the other. It is not so likely that a husband will freely collude with his wife when he knows that his employer or the partnership has an eye on him. And that scrutiny undoubtedly would be even

closer if the possibility existed of recovery in excess of the insurance coverage.

Moreover, as the majority of the Court pointed out in the opinion in *Eule, Hudson* does no violence to the rule that the wife cannot sue the husband. The liability of the employer did not stem from the husband's act *qua* husband, but rather from his acts as agent of the employer under the ancient doctrine of *respondeat superior* which has its roots deep in public policy. Furthermore, the opinion in *Eule* plainly indicated that that majority cast serious doubt on the dictum expressed in *Hudson* that if the employee's wife obtained a judgment in her action, the employer would have an indemnity action over against the employee-husband. *Eule v. Eule Motor Sales, supra,* 34 *N. J.* at 540–541.

It may be noted further in *Eule* that the Court referred to the provisions of the uniform partnership act which specifically make the "law of agency" applicable and say also that "[e]very partner is an agent of the partnership for the purpose of its business." *N. J. S. A.* 42:1–4(3), 42:1–9. In the face of the statute, the then majority of the Court found it difficult to believe that the Legislature intended to confer upon the partnership the personal immunity of the spouse. 34 *N. J.* at 542–543. And the opinion made clear with respect to the operation of an automobile on a partnership's business that under the statutory policy the driver's status as husband was immaterial; it was his capacity as agent that brought liability to the partnership.

It cannot escape notice that throughout the opinion in *Immer* the majority speak in terms of the interspousal immunity rule in negligence actions. And they say that our Court had adhered to the *Koplik* rule despite "a mounting wave of criticism by all the leading commentators on the subject." In the last three sentences of the opinion, however, the members of the majority declare they are limiting the decision overruling the immunity doctrine to "claims arising out of motor vehicle accidents." But why, if the condemnation of "virtually all of the academic writers on

the subject" is sound? If the principle is sound that one spouse should be subject to a damage suit for injuries caused by the negligence of the other because of liability insurance coverage, is it not equally applicable to a suit by a wife against her husband if she allegedly falls over the slippers he negligently left beside his chair or in the hallway the night before? Is the principle not applicable when a husband allegedly falls over his minor son's roller skates which his wife left on the staircase and forgot about? Is it not applicable if the father allegedly leaves his tube of suntan lotion in the bathroom within reach of his son who uses it, thinking it to be toothpaste, and then becomes violently ill? If the majority's new doctrine is consistent with public policy and morality, should such claims be excluded if they are honest, non-collusive ones, even when homeowners' liability insurance is held by the spouse or parent?

I believe the decision in *Koplik* was sound and so must dissent from the rule now adopted by the new majority in this case.

Justices HALL and HANEMAN join in this dissent.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR and SCHETTINO—4.

*For affirmance* — Justices FRANCIS, HALL and HANEMAN—3.