JOHN W. GOTSCH, PLAINTIFF, v.
GAIL GOTSCH, DEFENDANT.

Cumberland County Court
Law Division

Decided December 6, 1971.

Mr. *George J. Stillwell* for plaintiff (*Messrs. Greenblatt and Greenblatt,* attorneys).

Mr. *Irwin Kavesh* for defendant (*Messrs. Kavesh & Basile,* attorneys).

STALLER, J. C. C. This matter comes before the court on defendant's motion for summary judgment seeking the dismissal of the complaint upon the ground that plaintiff's claim is barred under the rationale of the cases of *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1 (1958), and *Darrow v. Hanover Tp.,* 58 *N. J.* 410 (1971).

The unrefuted facts presented on this motion, as set forth by recital in the briefs and affidavit with copies of letters attached filed by plaintiff's counsel, indicate that on July 5, 1970 plaintiff John W. Gotsch (hereinafter John) was a passenger in an automobile operated by Gail Brock (hereinafter Gail), which automobile left the highway and struck a stone wall, injuring plaintiff. Although the collision occurred in the State of New York, both John and Gail were and continue to be residents of New Jersey. On August 14, 1970 John called his attorney and told him about the accident. His attorney set up an appointment for August 17, 1970 wherein full details of the incident were elicited and counsel retained. On the same day John's attorney called and spoke with a representative of Gail's insurance carrier, Hartford Accident and Indemnity Company (hereinafter Hartford), advising the representative of his retainer, asserting that no complaint would be filed then but that further

conferences would be had after the local representative secured the initial investigation file from the New York office. Thereafter, and until September 8, 1970, John's attorney engaged in several telephone discussions with the carrier concerning the claim, the gist of which was to await further medical developments and procure reports and records, all with the view to an amicable disposition of the matter. During this period, on August 22, 1970, John and Gail were married.

John's attorney being uncertain of his client's new position as to the doctrine of marital immunity, and for the protection of his client's interest, sent a complaint to the county clerk on September 8, 1970 and a copy thereof to Hartford's representative, explaining in the letter of transmittal to the insurance company that "although we normally would not file a complaint at this time, I am doing so since the law in this area may change and I feel it is my duty to the client to see to it that the action is instituted." Further statements of the letter were to the effect that service would not be effected for ten days, that a 30-day extension of time to answer would be freely granted giving the carrier at least 60 days to answer, and that in the meantime sufficient records could be developed and presented and if the company wanted a physical examination another extension by court order would have his consent. Included in this letter were copies of initial hospital records which had just arrived. About 30 days later, on October 9, 1970, a doctor's report was forwarded to the carrier along with a copy of the doctor's bill to date, and John's attorney iterated his reasons for instituting the action and brought the company adjuster up to date as to service of process upon John's wife, giving assurance that consent would be granted to orders for filing answer out of time and asking if any other information was required.

On June 7, 1971 Justice Proctor, speaking for our Supreme Court in *Darrow v. Hanover Tp., supra,* held that the rule of *Immer v. Risko* abrogating the doctrine of inter-

spousal immunity in automobile negligence cases would be available only to persons suffering injuries in automobile accidents occurring after July 10, 1970, the date *Immer* was decided.

On June 17, 1971 the carrier's claims supervisor wrote to John's attorney asking if he was in a position to supply a list of the medical specials and lost wages, if any, expressing an interest in "how much the claimant earns, and whether or not he has returned to employment. This is necessary for the development of our file."

Shortly thereafter, apparently, the carrier retained counsel who on July 27, 1971, served a notice of motion before this court for an order of summary judgment dismissing the husband's complaint against his wife upon the grounds that the claim was barred under the rationale of *Koplik* and *Darrow, supra.*

In support of the motion it is contended that prior to *Immer v. Risko,* 56 *N. J.* 482 (July 10, 1970), the interspousal immunity rule in automobile negligence cases was specifically applied to suits between spouses in antenuptial torts. *Koplik, supra.* Therefore, since the accident occurred five days before *Immer* was decided, the doctrine of interspousal immunity still applies under the authority of *Koplik* because *Darrow* holds that the *Immer* rule is available only prospectively.

Justice Proctor, in deciding *Immer v. Risko, supra,* pointed out (at 485) that although the number of courts opposing the interspousal immunity doctrine was growing, our Supreme Court in abrogating it was not going to predicate its decision on the trend but upon its own view of the policies involved. This led to the further statement flowing from *Long v. Landy,* 35 *N. J.* 44 (1961), that "when the reasons for immunity are absent, a cause of action should be recognized and enforced by our courts." (at 487).

There then followed a reexamination of the reasons to determine whether such reasons were present in the case:

Legal identity of husband and wife was cast out as artificial and technical. (at 488). Disruptive effect upon the harmony of the family was carefully analyzed and it was concluded that a denial of the right to bring an interspousal action is as likely to disrupt the family harmony as is the right to maintain the action; it was further reasoned that, realistically, virtually every owner of a motor vehicle with a sense of responsibility carries liability inusrance coverage and the presence of insurance militates against disruption of the interspousal relationship; that the cost of making the injured spouse whole would necessarily come out of the family coffers if this void in insurance coverage were to remain, and such a drain on the family resources would be more likely to disrupt the harmony of the family than if recovery could be had. (at 489).

The most troublesome reason considered in *Immer* was that there was a possibility of fraudulent and collusive litigation against the frequent real party in interest — the insurance carrier. (at 490). It is this reason rationalized and discarded which must be considered in a determination of the present case. As was stated in *Immer,* citing *Rozell v. Rozell,* 281 *N. Y.* 106 (Ct. App. 1939):

The Courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud and collusion in one class of cases than another does not warrant courts of law in closing the door to all classes of cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. [at 494]

And further our court stated:

In a day when automobile accidents are unfortunately becoming so frequent and the injuries suffered by the passengers are often so severe, it seems unjust to deny the claims of the many because of the potentiality for fraud by the few. (p. 495)

We come now to a consideration of *Darrow v. Hanover Tp., supra,* which it is contended gives only prospective force to the *Immer* rule.

Here again the court considered whether there were sound policy reasons for limiting the *Immer* rule to prospective effect. (*Darrow* at 414) The first reason considered was that retrospective application of *Immer* would result in an undue burden on the court system. This was quickly disposed of since our court system is designed to serve the needs of the people and it would not be fulfilling its purpose if it excluded litigants because of inconvenience to lawyers and judges. (at 414) Indeed, an example of this forthright philosophy is the most recent rule change suggestion to lengthen court hours and curtail court recesses to accommodate the burgeoning backlog of matters before the courts of our State. 94 *N. J. L. J.* 761, 771 (August 19, 1971)

The next policy reason studied for giving only prospective effect to the *Immer* rule was that in *Immer* the court's decision was predicated on the availability of insurance; prior to January 1, 1967 there was *no* coverage afforded in the Standard Family Automobile Policy in New Jersey, and retrospective effect would defeat *Immer's* purpose. The court dismissed this by asserting that while the presence of insurance was a factor, the court never held nor meant to imply that absence of insurance would be a bar to suits between spouses. (at 415)

The policy reason which the court found acceptable for prospectivity was that there was *justifiable reliance* on earlier decisions of our courts upholding interspousal immunity. (at 415). In fact, such reliance has shown itself to be the primary factor which led courts in other jurisdictions to give prospective effect to their decisions abrogating immunities, (at 416), and where in some cases our courts gave retrospective effect to such decisions it was found that there was no reasonable basis for reliance on the continuance of the specific immunity doctrine. *Dalton v. St. Lukes Catholic Church,* 27 *N. J.* 22, 26–27 (1958). (at 417).

However, our Supreme Court found support in the contention for prospectivity in *Darrow* because it found that there was a reasonable basis for reliance on the existing state of the law in New Jersey of interspousal immunity. (at 418). The reliance was that of the insurance carriers who are most frequently the real parties in interest, and the area of their primary reliance is the investigation of accidents.

As stated in *Darrow*:

> While this court was firmly split, insurers had no reason to promptly investigate accidents involving the possibility of interspousal claims. It is crucial to an adequate determination of liability that an insurer have the opportunity to gather evidence as soon as possible after the accident. To effectively protect its interests, a carrier must ordinarily identify the witnesses and take their statements while their memories are fresh; it must also make prompt physical examination of prospective claimants. As time passes, witnesses disappear, memories fade and claimants may have intervening physical difficulties; investigations can be pursued only with great difficulty and little promise of success. When we spoke in *Immer* of the ability of trial judges and juries to weed out collusive and fraudulent claims, 56 *N. J.* at 493–494, we were thinking of claims which could be adequately defended through an independent investigation of the facts. If insurance carriers are reduced to relying entirely upon statements by the litigant spouses, without further investigation, the task may prove too onerous [at 419]

The court in *Darrow* also found a corollary to the protection of carriers by giving prospective effect to *Immer*, *i. e.*, that it would foster stability by avoiding the necessity of opening claims which might have gone stale because of failure to promptly investigate. (at 419).

Having considered the rationale of *Darrow* so vigorously contended for by the movant, we turn now to the application of such rationale to the case before us.

Before doing so, however, *Koplik v. C. P. Trucking Corp.*, *supra*, must be dealt with. *Koplik* held that the immunity doctrine applied to prenuptial torts.

As in *Koplik*, *Immer v. Risko* likewise dealt with parties who were unrelated at the time of the tort and who married

each other after suit was filed. Justice Proctor having resolved for the court that the doctrine of interspousal immunity should be abrogated, found no necessity to specifically reverse *Koplik*. It is obvious, therefore, that *Koplik* is no longer the law of this State and there is no need to reverse *Koplik* as is urged by plaintiff.

In the instant case, a prenuptial tort, it is clear that Hartford did not rely on interspousal immunity to prevent its investigation. Indeed, it had apparently commenced an investigation in New York where the accident had occurred, and the agent sent for the investigation file from the New York office. This was an investigation of an accident involving parties unrelated to each other. After the file was secured further information was supplied and negotiations were carried on looking toward amicable settlement. Even after *Darrow* was decided Hartford was still seeking information as to plaintiff's loss of earnings.

Since *justifiable reliance* is the basic rationale of *Darrow* and no prejudicial reliance is shown by defendant's carrier, the reasons for immunity are absent and the cause of action should be recognized and enforced. *Long v. Landy, supra.* Moreover, the additional purpose of declaring prospectivity only to the *Immer* rule, that of fostering stability and avoiding the necessity of opening claims which might have gone stale because of a failure to promptly investigate, is not present in the case before this court.

Motion for summary judgment is accordingly denied.