Norman A. Stiller, J.
This is an action commenced Tby the plaintiff on December 1, 1970 for a judgment declaring that the plaintiff is not obligated to indemnify or defend the defendants with respect to any liability accruing against any one of them by reason of an accident at the defendant, Philip C. Wilson’s home on October 24, 1968, and further declaring that a certain homeowners insurance policy, No. 255491, issued to the *1021 defendants, Peter C. Wilson and Mary Wilson, his wife, limited comprehensive personal liability coverage at the time of the accident to the amount of $10,000.
An agreed statement of facts has been submitted which shows that on October 24,1968 the infant defendant, Peter Wilson, then 4 years old, was injured when his brother, Matthew Wilson, who was then 11 or 12 years old, acting at the request of their mother, Mary Wilson, attempted to start a charcoal fire in the garage of their home. Apparently, Matthew used shellac thinner to help commence the fire, and the resulting flare-up or explosion caused burns to Peter Wilson’s face.
It is stipulated that on the date of the accident, the adult defendants, that is, the father and mother of Peter and Matthew, were the owners of a policy of insurance issued by the plaintiff, a homeowners policy, No. H-255491, which, on the face or deck sheet of the policy, provided a basic limit of $10,000 personal liability coverage for each occurrence.
On September 4, 1970, the injured infant, Peter Wilson, and his father, acting as his natural guardian, notified the plaintiff of the accident, by way of a letter written by the attorney for the injured infant and his father. This was approximately 1 year and 11 months after the accident and the plaintiff claims that since this first written notice was not timely plaintiff should be relieved from its obligation to defend or indemnify any of the defendants as a result of any claim that arose out of the accident of October 24, 1968.
The insurance policy in question provides that ‘ ‘ when an occurrence takes place, written notice shall be given by or on behalf of the insured to this Company or any of its authorized agents as soon as practicable. ’ ’ It has been observed, however, that this language does not require instantaneous notice but rather that notice be given with reasonable dispatch, in view of all the facts and circumstances of each particular case. (See 8 Appleman, Insurance, § 4734.)
The defendants attempt to excuse a portion of the delay by pointing out that at the time of the accident an unemancipated minor could not maintain an action in New York courts against a parent for a nonwillful tort. That doctrine was discarded by the New York Court of Appeals approximately two and a half months after the subject occurrence by its decision in Gelbman v. Gelbman (23 N Y 2d 434 [Jan. 9, 1969]). The defendant Philip Wilson, father of the injured infant, alleges that he first became aware of this change in the law on or about September 1, 1970 and that, therefore, the notice given on his and his son’s behalf by their attorney on September 4, 1970 *1022 was given “ as soon as practicable Still this notice itself was not given until nearly 1 year and 8 months after the Gelbmcm decision; and during that period and for long years before, an unemancipated infant was permitted to maintain an action against an unemancipated sibling for negligent conduct resulting in injury (Rozell v. Rozell, 281 N. Y. 106 [1939]). Therefore, from the date of the accident forward, a cause of action existed on behalf of the injured infant, Peter Wilson, against his brother Matthew' as to which no notice was given until some 22 months later. However, even though an assured may have failed to give notice to the carrier, the injured party has the right to do so (Insurance Law, § 167, subd. 1, pars, [c], [d]) and the standards by which the timeliness of such notice is to be judged are not as stringent as those which apply to notice given by an assured (Lauritano v. American Fid. & Cas. Co., 3 A D 2d 564, affd. 4 N Y 2d 1028).
The passage of time alone does not make delay unreasonable where justifiable lack of knowledge that coverage existed is shown, as in Lauritano and in Mason v. Allstate Ins. Co. (12 A D 2d 138).
If sufficient excuse can be given for the delay in giving timely notice, such notice may be sufficient.
In Ferguson v. Nationwide Mut. Ins. Co. (61 Misc 2d 912) a 19-month delay in the giving of notice was held to be excusable insofar as a personal injury claim of a 13-year-old infant was concerned as the infancy precluded the giving of timely notice. The same delay, however, was considered unreasonable as to a mother’s derivative claim in the same case.
In the case at hand, it cannot reasonably be expected that the injured infant, Peter Wilson, four years old at the time of the accident, would be chargeable with knowledge of the policy or its terms, or indeed .of the existence of any claim against his brother or parents.
However, timely filing of notice by an injured party will not excuse late filing by another injured party. (See Matter of Lloyd [MV AIC], 23 N Y 2d 478 and Ferguson v. Nationwide Mut. Ins. Co., supra.)
Accordingly, as to the infant defendant, Peter Wilson, timely notice was given and plaintiff is obligated to defend and indemnify the named assureds and the additional infant assured, Matthew Wilson, so far as their liability may be determined in regard to the accident of October 24, 1968. However, as to the father’s derivative claim, assuming that such a claim could be made by a named assured, the delay has been too extended. *1023 Even though the father may not have been aware that the law had changed permitting an infant to sue a parent, the right of an infant to sue his brother existed both before and after the accident, so his excuse is not sufficient. Plaintiff, therefore, is not obligated to defend or indemnify any of the defendants as to Philip C. Wilson’s derivative claim as parent of Peter Wilson.
Finally, there is plaintiff’s contention that the policy limits at the time of the accident were $10,000 per occurrence.
In August, 1967 the New York Fire Insurance Bating Organization of which the plaintiff is a subscriber, in conjunction with the Multi-Line Insurance Bating Bureau, filed with the New York Fire Insurance Bating Organization proposed revisions of the homeowners program in New York State. By bulletin effective October 1, 1967, the homeowners program was revised and as part of the revision, the basic limit for comprehensive personal liability insurance for policy Forms A and B (the policy in question being a Form B) was increased from $10,000 to $25,000. The revision was accepted by the Insurance Department with the provision that there be no change in the overall rate level for such policies and that a policy indorsement not be required for the revision extending the comprehensive personal liability insurance coverage. (See Bulletin 67-10 New York Fire Insurance Bating Organization.)
It is claimed by the assureds that the so-called liberalization clause in their policy operated so as to increase the comprehensive personal liability limit contained in their policy from $10,000 to $25,000 per occurrence in accordance with the revision made in the homeowners program. Briefly, the liberalization clause provides that if, during the period the policy is in force, there is adopted or filed with the insurance supervisory authorities, any change on behalf of the insurance company by which the form of insurance is extended or broadened without increased premium charge by indorsement or substitution of form, then the extended or broadened insurance inures to the benefit of the insured as though such indorsement or substitution of form had been made as to the policy itself.
Here, it appears that all of the requirements of the liberalization clause were met. As pointed out by the defendants, the increase in limits of coverage occurred during the policy period; the change was filed with and approved by the New York State Department of Insurance; the change was made without increased premium charge and, finally, the change insofar as this portion of the revision was concerned, did not require an indorsement to or substitution of policy.
*1024 Although there might have been an increased premium for policies similar to the Wilson policy written after October 2, 1967, the testimony indicates that such minimal increase was not necessarily related to the increased limits provided for in the comprehensive personal liability coverage. Certainly, if there is any ambiguity in regard to the liberalization danse of the insurance policy, it must be construed strictly against the insurer. (Ginell v. Prudential Ins. Co., 237 N. Y. 554.)
It is further noted that other insurance companies treated the increase in comprehensive personal liability coverage basic limits as immediately attaching- to and being applicable to any and all policies in force as of the effective date of the revision.
It is the judgment of this court that the plaintiff is obligated to defend and indemnify each of the defendants as are or may be liable to the infant, Peter C. Wilson, under the terms of the homeowners policy issued to the defendants, Philip C. Wilson and Mary Wilson, and that the plaintiff is not obligated to defend or indemnify any defendant as to the derivative claim of Philip C. Wilson and it is the further judgment df this court that as of October 7, 1967, the comprehensive liability coverage issued by this plaintiff to the defendants, Philip G. Wilson and Mary Wilson, was then and thereafter fn the basic amount of $25,000.